(60 App. Div. 307.)

### PEOPLE v. GLUCKMAN et al.

(Supreme Court, Appellate Division, First Department. April 29, 1901.)

1. TRADE-MARKS—COUNTERFEITING—COMPLAINT.

Pen. Code, § 364, subd. 1, provides that a person who knowingly makes or counterfeits a trade-mark shall be guilty of a misdemeanor. Section 366 defines a trade-mark as a mark to indicate the maker, owner, or seller of an article of merchandise, and includes any name of a person or corporation, or any letter, word, device, emblem, figure, seal, stamp, label, or other mark lawfully adopted by him, and usually affixed to an article of merchandise to denote that the same was imported, manufactured, produced, sold, compounded, bottled, packed, or otherwise prepared by him. *Held*, that a complaint alleging that plaintiff was a special agent for M. & Co., foreign manufacturers and dealers in brandy, and that they had adopted the trade-mark and label set out, and that complainant contracted with defendants to print false and counterfeit labels, one of which was set out as an exhibit, and that defendants printed and delivered to complainant 5,000 false and counterfeit labels and trade-marks exactly similar to the original trade-mark used by M. & Co., for a consideration of $62 paid by complainant to defendants, and that defendants, acting in concert as aforesaid, did on the 16th day of June, 1900, at the borough of Manhattan, said county and state of New York, unlawfully, falsely, and knowingly make and counterfeit the label and trade-mark of said co-partners as aforesaid, sufficiently stated facts constituting a crime, within such section.

2. SAME—EVIDENCE.

In a prosecution for counterfeiting a trade-label, complainant testified that he was a special agent for M. & Co., brandy dealers in France, and that defendant G. made plates from which counterfeit labels were to be printed, which labels were counterfeits of labels used by M. & Co., and that complainant paid defendant K. for printing these labels $62. An-

·other witness testified that he was familiar with the business of M. & Co.; that he had visited their place of business, and saw the genuine labels put on the bottles, and that the label was the uniform label used by M. & Co., and that it was the identical label used by ·M. & Co.· on bottles exported to the United States, and that the label annexed to the complaint was the identical label which witness saw affixed in France to a bottle exported to the United States, and that he had seen the identical label on the same goods in the office of M. & Co. in New York; that, when defendant was asked to counterfeit the labels, he said that he would have to do the job on Sunday or nights, and that he did not want to run any chances of being caught, and that he had made the charge because it was dangerous work to print the labels. Defendant denied, in his own behalf, that he ever printed the labels, or had anything to do with complainant. *Held*, that the evidence was sufficient to sustain a conviction.

**:8. SAME.**

A contention that defendant could not be said to have counterfeited the label, because he was requested to print it from a plate furnished by an agent of the owner of the trade-mark, and that though he understood that he was counterfeiting the label, and intended to counterfeit it, he could not be convicted, because he printed it for an agent of the owner, who had a right to have it printed, was not sustainable, there being no evidence that the agent had any authority to have the labels printed, since, without such authority, one who printed the labels falsely made or counterfeited their trade-mark, in violation of the statute.

**·4. SAME—FORMER ACQUITTAL—INVALID COMPLAINT—DEMURRER.**

Where a demurrer is sustained to a complaint for counterfeiting a label on the ground that the complaint was insufficient to charge an offense, the judgment sustaining the demurrer was not.a bar to a. subsequent prosecution under a complaint which did charge an offense.

**:5. SAME—DEMURRER TO COMPLAINT IN NEW YORK COURT OF SPECIAL SESSIONS —LEAVE TO RESUBMIT—APPLICABILITY OF CODE OF CRIMINAL PROCEDURE.**

Code Cr. Proc. § 327, provides that on an allowance of a demurrer to an indictment the judgment is final on the indictment demurred to, and ·is a bar ·to any· prosecution for the same· offense, unless the court direct the case to be resubmitted to the same or another grand jury.· New York City Charter, c. 378, § 1407, declares that all sections ·of the Code ·of Criminal Procedure consistent with the act regulating the practice and· procedure of the court of general sessions in the city of New York shall apply in the court of special sessions. *Held*, that though, assuming that an information in the court of special sessions took the place of an indictment in the court of general sessions, and that section 327 applied to a demurrer to a complaint in the court of special sessions, the provision barring a subsequent prosecution on the sustaining of a demurrer must be taken ·in connection with a subsequent provision which allows a resubmission, and hence that a judgment of the court of special sessions sustaining a demurrer to a complaint for insufficiency, with leave to file another, could not operate as a bar to the subsequent prosecution.

Van Brunt, P. J., and O'Brien, J., dissenting.

Appeal from court of special sessions of city of New York.

Henry Gluckman and Paul Krivitzky were charged with falsely ·making and counterfeiting a trade-mark, in violation of Pen. Code, § :364. From ·a judgment convicting defendant Krivitzky, he appeals. Affirmed.

The following is the complaint referred to in the opinion:

John F. Miller, being duly sworn, deposes and says as follows: (1) That ·he resides at No. 714 Halsey street, in the borough of Brooklyn, in the city of New York, and is twenty-five years of age, and is by occupation a special agent. (2) That at all times hereinafter named Edward Martell, Rene Fireno, ..and Richard Harrison were, and still are, co-partners, under the firm name . and style of Martell.& Co., lawfully doing business as manufacturers ·of and

dealers in brandy at the borough of Manhattan, in the city, county, and state of New York, and elsewhere, and that the true and genuine label and trademark of the said co-partners is hereto annexed, and marked "Exhibit A," and made a part of this affidavit, complaint, and information. (3) That on the 29th day of May, 1900, at the borough of Manhattan, in the city, county, and state of New York, at the premises No. 215 Broome street, the said Henry Gluckman introduced the deponent to the said Paul Krivitzky, in accordance with previous conversations between the deponent and the said Henry Gluckman, and then and there informed the deponent that the said Paul Krivitzky would make and print for the deponent false and counterfeit labels and trademarks of the said co-partners, from a false and counterfeit die theretofore made by the said Gluckman; and the said Paul Krivitzky then and there offered to make and print the same in accordance with the suggestion of the said Henry Gluckman. (4) That thereafter, and on the 16th day of June, 1900, at the borough of Manhattan, city, county, and state of New York, at the premises No. 215 Broome street, the said Paul Krivitzky delivered to the deponent five thousand false and counterfeit labels and trade-marks of the said co-partners, and received therefor the sum of $42 in good and lawful money of the United States of America, having theretofore received therefor on account thereof $20 in good and lawful money of the United States of America, making the total price of such false and counterfeit labels and trade-marks of the said co-partners to be the sum of $62; that a copy of the said false and counterfeit trade-marks of the said co-partners so delivered as aforesaid is hereto annexed, and marked "Exhibit B," and made a part of this complaint. (5) That the said Henry Gluckman introduced the deponent to the said Paul Krivitzky as aforesaid, and did agree with the said deponent and the said Paul Krivitzky that the said false and counterfeit labels and trade-marks should be unlawfully, knowingly, and falsely so made and counterfeited as aforesaid, and did, therefore, unlawfully, knowingly, and falsely participate with the said Paul Krivitzky in said crime as aforesaid, and did unlawfully, knowingly, and falsely aid and abet in its commission, and did unlawfully, knowingly, and falsely induce and procure the said Paul Krivitzky to commit the said crime aforesaid. (6) That the deponent is engaged in business as a special agent for the said co-partners, and is familiar with the genuine label and trade-mark of the said co-partners and knows of his own knowledge that Exhibit A, hereto annexed, is the true and genuine label and trade-mark of the said co-partners, and that Exhibit B, hereto annexed, is a false and counterfeit trade-mark of the said co-partners. (7) That the said Henry Gluckman and Paul Krivitzky, acting in concert as aforesaid, did on said 16th day of June, 1900, at the borough of Manhattan, in the city, county, and state of New York, unlawfully, falsely, and knowingly make and counterfeit the label and trade-mark of the said co-partners as aforesaid. The deponent prays, therefore, that a warrant issue for the apprehension of the said Henry Gluckman and Paul Krivitzky, and that they be apprehended and dealt with according to law. [Signed] John F. Miller.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

S. A. Seidman, for appellant.

Charles E. Le Barbier, for respondent.

INGRAHAM, J. The appellant was convicted of a violation of subdivision 1 of section 364 of the Penal Code, which provides that a person who knowingly or falsely makes or counterfeits a trade-mark is guilty of a misdemeanor. Section 366 of the Penal Code defines a trade-mark as "a mark to indicate the maker, owner or seller of an article of merchandise, and includes, among other things, any name of a person or corporation, or any letter, word, device, emblem, figure seal, stamp, * * * label or other mark, lawfully adopted by him, and usually affixed to an article of merchandise to denote that the

same was imported, manufactured, produced, sold, compounded, bot-
tled, packed or otherwise prepared by him." The complaint·upon
which this conviction was had was made before a justice at the court
of special sessions, sitting as a magistrate, and upon this information
the appellant was examined before the magistrate according to law.
He was then tried before the court of special sessions, and convicted,
and sentenced to pay a fine of $500. Upon the trial, counsel for the.
appellant moved to dismiss the complaint and for the acquittal of the
appellant on the ground that the complaint does not state facts suffi-
cient to constitute a crime. That motion was denied, to which there
was an exception. We think that this complaint was clearly suffi-
cient to bring the case within the provisions of this section of·the
Penal Code, and that motion was properly denied.

Upon the trial the complainant was sworn, and testified that he was
a special agent for Martell & Hennessy; that he made an arrange-
ment with the defendant whereby the defendant was to print labels
in imitation of the labels of the Martell & Hennessy brandy; that
Gluckman made the plates from which the labels were to be printed,
which were delivered to the appellant; that in pursuance of this
agreement the appellant printed 5,000 of the said labels, and deliv-
ered them to the complainant, for which the complainant paid him
$62. The witness also testified that he was familiar with the labels
of the Martell brandy; that he was in the employ of the proprietors
of the brandy, and had seen these labels used upon brandy imported
from France purporting to be bottled by Martell & Hennessy. Mr.
Pinkoff was called as a witness, and testified that he was acquainted
with the firm of Martell & Co., and that their place of business is at
Cognac, France, and that the firm is composed of Edward Martell,
Rene Fireno, and Richard Harrison; that he visited this firm at their
place of business in Cognac, France, went through their works there,
saw the place where the brandy was bottled, saw these labels put on
the bottles, and was familiar with the goods; that the label was the
uniform label used by this firm of Martell & Co. during the year and
a half prior to the trial; that he saw this identical label used by the
firm of Martell & Co. put on the bottles of Martell & Co. subsequently
brought here, and that he received from the agent in this country of
Martell & Co. several of the original labels; that the label which was
annexed to the complaint was the identical label which the witness
saw affixed in France to a bottle, which bottle was put in a case and
addressed to parties in America; and that the witness had also seen
this identical label on the same goods in the office of the agent of
Martell & Co. in New York. Miller, the complainant, also testified
that, when the appellant was asked to counterfeit these labels, he
said that he would print them; that he had to do the jobs on Sundays
or nights; that he did not want to run any chance to be caught; that·
he would have to do the work either Sunday or at night, because, if
he did it in the daytime, some one might walk in and catch him; that
he had made the charge that he did because it was dangerous work to
print these labels. The appellant was called as a witness in his own
behalf, and testified that he never printed these labels, and never had
anything to do with the complainant.

We think this conviction was proper, and should be sustained. The fact that the label which the appellant counterfeited was used by Martell & Co. upon the bottles containing their brandy, which was imported into the United States and sold here, was proved. This was evidence of a practical adoption of this label as a trade-mark used to indicate the maker, owner, or seller of this article of merchandise. It thus brought this label within the definition of a trade-mark as contained in section 366 of the Penal Code. It was the label of Martell & Co., which they used upon their brandy to indicate that it was manufactured and sold by them. It was the label, as a whole, that was used as the trade-mark of Martell & Co.; and it was this label, as a whole, that the appellant counterfeited. It was sufficient to show that this label was appropriated and used by the firm of Martell & Co. upon their goods manufactured and sold by them, to indicate that they were the manufacturers and sellers; and that was shown by the fact that Martell & Co. did put this label upon their goods, and that goods with this label were sent by them to this country for sale. We think, therefore, that the crime charged was proved, and that the appellant was properly convicted.

It is urged, however, that the appellant could not be said to counterfeit this label, because he was requested to print it from a plate furnished by an agent of the owner of the trade-mark, and that although he understood that he was counterfeiting the label, and intended to counterfeit it, he in fact printed it for an agent of the owner, who had the right to have it printed. By the statute, a person who "falsely makes or counterfeits a trade-mark" is guilty of a misdemeanor. This complainant was not authorized to have those labels printed for Martell & Co., and did not employ the appellant to print them for that firm. The appellant was asked to print a false or counterfeit trade-mark, and it was that which he did. The real label was prepared in France, put upon the bottles in France, and could only be made in this country fraudulently. Martell & Co., who own the trade-mark, never, so far as appears, authorized any one to have these labels printed in this country; and, without such authority, any one who printed them here did "falsely make or counterfeit" their trademark, and it was just this that the appellant did. The complainant described himself as a special agent or investigator for the Martell & Hennessy Brandy people, but there is no evidence that he had any authority to have genuine labels printed; and the appellant agreed to print, not genuine labels, but imitation labels, and it was this that he did, and thereby he falsely made or counterfeited the trade-mark, and was guilty of the offense charged.

The appellant also claims that the allowance of the demurrer to a former complaint barred all further prosecution for the same offense. It appeared that prior to the institution of this proceeding the defendant was arrested upon a charge made by the complainant. To this charge the appellant demurred, which demurrer was sustained. The judgment sustaining the demurrer, however, allowed leave to resubmit. In pursuance of this leave, the complaint upon which this conviction was had was submitted to a magistrate, and upon this charge the appellant was arrested. The first charge is so indefinite

that it is impossible to say that it relates to the same charge as that upon which the appellant was convicted; but, if it be held that it was intended to charge the same offense, the allowance of the demurrer showed that the charge as first made did not charge an offense, and, as it failed to do so, it could not be a bar, in the absence of some legislative prohibition, to a complaint which did charge an offense. The appellant claims, however, that, under the provisions of the Code of Criminal Procedure, made applicable to proceedings before the court of special sessions by section 1407 of the New York charter (chapter 378 of the Laws of 1897), the allowance of a demurrer is a bar to another prosecution for the same offense. By section 327 of the Code of Criminal Procedure it is provided that, upon the allowance of a demurrer to an indictment, the judgment is final upon the indictment demurred to, and is a bar to another prosecution for the same offense, unless the court, being of the opinion that the objection on which the demurrer is allowed may be avoided in a new indictment, direct the case to be resubmitted to the same or another grand jury. It is quite doubtful whether this can apply to a criminal information where there is no indictment. The provision of the New York charter that "all sections of the Code of Criminal Procedure consistent with this act, regulating and controlling the practice and procedure of the court of general sessions of the peace in the city and county of New York, shall apply as far as may be to the practice and procedure in said court of special sessions," could only apply where the practice is the same in both courts; and as the court of special sessions proceeds upon an information, and not upon an indictment, the provisions of the Code of Criminal Procedure in relation to indictments are evidently not applicable. The allowance of a demurrer to an information is entirely distinct from an allowance of a demurrer to an indictment, and the provisions as to the effect of an allowance of a demurrer to an indictment could not apply to the allowance of a demurrer to an information. But assuming that an information in the court of special sessions took the place of an indictment in the court of general sessions, and the provisions relating to an indictment applied, then the provision that the allowance of a demurrer to the charge is a bar to the subsequent proceeding must be taken in connection with the subsequent provision of the section, which allows the court to direct the case to be resubmitted; and as the court, in allowing the demurrer to the first charge, gave leave to resubmit, as part of its judgment allowing the demurrer, the allowance of the demurrer was not a bar to a further prosecution of the offense.

Upon the whole case, we think this appellant was clearly guilty, was properly convicted, and that the judgment appealed from should be affirmed.

RUMSEY and HATCH, JJ., concur. VAN BRUNT, P. J., and O'BRIEN, J., dissent.