(94 App. Div. 453.)

PEOPLE v. STRAUSS et al.

(Supreme Court, Appellate Division, First Department. May 13, 1904.)

1. CRIMINAL LAW—EVIDENCE—ACCOMPLICE—CORROBORATION.

In a prosecution for having in possession and selling counterfeit trade-marks, in violation of Pen. Code, § 364, subd. 4, Code Cr. Proc. § 399, declaring that a conviction cannot be had on the testimony of an accomplice, unless corroborated by such other evidence as tends to connect the defendant with the commission of the crime, does not require that the accomplice shall be corroborated as to every material fact, but the corroborating evidence is sufficient if it is of such a character as tends to prove the defendant's guilt by connecting him with the crime.

2. SAME—SUFFICIENCY OF EVIDENCE.

In a prosecution for having in possession and selling counterfeit trade-marks, in violation of Pen. Code, § 364, subd. 4, evidence of third persons *held* to sufficiently corroborate the evidence of an accomplice to sustain a conviction.

3. SAME—CO-OFFENDERS—STATEMENTS.

Where two defendants were joint active participants in putting up and handling counterfeit labels, in violation of Pen. Code, § 364, subd. 4, declarations by one defendant, though in the absence of the other, were admissible against both.

4. SAME—MISDEMEANORS—JOINT TRIAL.

The offense of having in possession and selling counterfeit trade-marks and labels, in violation of Pen. Code, § 364, subd. 4, is a misdemeanor, and hence defendants, acting in concert in the commission of such offense, may be properly tried together.

Appeal from Court of Special Sessions of City of New York.

William L. Strauss and William L. Haas were convicted of having in their possession and selling counterfeit trade-marks, and they appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Julius M. Mayer, for appellants.
Howard S. Gans, for respondent.

HATCH, J. Defendants herein were both convicted of the offense of having in their possession and selling counterfeit trade-marks, in violation of subdivision four of section 364 of the Penal Code. Upon conviction each defendant was sentenced to 10 days in the city prison and to pay a fine of $500. Section 364 of the Penal Code provides:

"A person who knowingly * * * (4) has in his possession a counterfeit trade mark, knowing it to be counterfeit, * * * (7) is guilty of a misdemeanor."

¶ 1. See Criminal Law, vol. 14, Cent. Dig. §§ 1128, 1129.

Section 366 of the Penal Code defines a trade-mark to be—

"A mark to indicate the maker, owner or seller of an article of merchandise, and includes, among other things, any name of a person, or corporation, or any letter, word, device, emblem, figure, seal, stamp, diagram, brand, wrapper, ticket, stopper, label, or other mark, lawfully adopted by him, and usually affixed to an article of merchandise, to denote that the same was imported, manufactured, produced, sold, compounded, bottled, packed, or otherwise prepared by him; and also a signature or mark, commonly used or commonly placed, by a painter, sculptor, or other artist, upon a painting, drawing, engraving, statue, or other work of art, to indicate that the same was designed or executed by him."

Section 368 provides that:

"An imitation of a 'trade-mark' is that which so far resembles a genuine trade-mark as to be likely to induce the belief that it is genuine, whether by the use of words or letters, similar in appearance or in sound, or by any sign, device or other means whatsoever."

It appeared that the defendants were, in the year 1901, copartners carrying on business under the firm name of William L. Strauss & Co., at No. 27 Warren street, in the borough of Manhattan, city of New York, claiming to be dealers in druggists' supplies. It was testified to by Sigmund Schulhafer that some time in the year 1901 defendants, in company with each other, called upon him at No. 2331 Third avenue, in the city of New York, where he was then engaged in carrying on the business of wholesale liquor dealer. The defendants informed him that they could procure labels and caps so close in imitation to the labels and caps used upon the bottles of Hunter Whisky that the difference could scarcely be detected. Schulhafer, after such conversation, ordered of the defendants 10,000 caps, and in response to a telephone message received several days later he sent his truckman to the defendants' place of business for the caps in question. The truckman returned with the case, it was opened in his presence and Schulhafer's, and was found to contain the caps which he had ordered. The purchase price of the caps was $500. Upon attempting to use them, however, they proved to be too small, many of them split in the attempt to place them upon bottles, and subsequently a compromise was made between the defendant Haas and Schulhafer whereby he only paid $150 for this case of caps. In the spring of 1902 Haas came to Schulhafer's place of business and told him that his partner, Strauss, was going to Europe, and that if he wanted any more caps they could get them, and that these caps would be perfect. Haas also told him that he could get Hunter labels, and thereupon Schulhafer gave him an order for 5,000 labels and for more caps. Some months later he was called on the telephone by the defendant Strauss, whose voice he recognized, and was informed by him that the goods had arrived. Thereupon Schulhafer sent his clerk, Miller, for the labels. He returned with a package which was opened in the presence of the clerk and Schulhafer, and it was found to contain 10,000 Hunter labels. In the spring of 1903 Schulhafer gave another order to the defendants for Hunter labels, and in the early part of August the defendant Haas informed him that they were ready, and that he would send them up to him. Thereafter Monroe Schulhafer, nephew of the liquor dealer, who was then in the employ of the defendants, took the package to Schulhafer's place of business, where it was

opened and found to contain Hunter labels. It appeared without dispute that the labels thus furnished by the defendants to Schulhafer were imitations of the genuine Hunter labels and caps, which were used by William Lanahan & Sons, of Baltimore, for the purpose of advertising and designating the genuine Hunter Rye Whisky, and that such caps and labels constituted a trade-mark of the sellers of Hunter Whisky, and had been used by such firm continuously for three years and upwards. It is evident, therefore, that, if the testimony of Schulhafer is to be believed, an offense was established to have been committed within the provisions of the sections of the Penal Code to which we have called attention. People v. Krivitzky, 60 App. Div. 307, 70 N. Y. Supp. 173, affirmed on appeal 168 N. Y. 182, 61 N. E. 175.

It is said, however, that this conviction cannot be sustained, for the reason that Schulhafer was an accomplice of the defendants in this violation of law, and that the people failed to ·corroborate his testimony with such certainty as the law requires. We assume, for the purposes of this discussion, that Schulhafer was an accomplice. The rule with respect to the corroboration of accomplices in cases of this character is found in section 399 of the Code of Criminal Procedure. It reads:

"A conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime."

Under this statute it is claimed by the defendants that the corroboration must extend to every material fact essential to constitute the crime, and that in this the people have failed. This is undoubtedly the true rule where, by the provisions of the statute, corroboration of every material fact is required. Such a rule applies in cases of rape. People v. Page, 162 N. Y. 272, 56 N. E. 750. Under the statute which we have quoted, and which is applicable to this case, the rule requiring corroboration does not go to this extent. It was said by Judge Martin, writing for the court in People v. O'Farrell, 175 N. Y. 323, 67 N. E. 588, after considering the case to which we have called attention and others:

"It is true those cases arose under a different statute, which provided that no conviction could be had upon the testimony of the person injured, unsupported by other evidence, while the statute under consideration provides that a conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime. Although, under those statutes, the rule is different as to the amount of corroboration required, still in either case the corroboration must be of a character and quality which tends to prove the defendant's guilt by connecting him with the crime. If there is evidence fairly tending to show such connection, so that the conviction will not rest entirely upon the evidence of the accomplice, then the question whether the evidence is sufficient corroboration to induce the jury to find against the defendant is for it to determine."

Under this rule it is evident that the testimony is abundant to corroborate Schulhafer. Neither his truckman, his clerk, nor his nephew were participants in the commission of this offense, and their testimony is sufficient in fairly tending to prove the defendants' guilt by connecting them with the crime. Michael Miller, who was employed in 1901, by Schulhafer, testified that just before the holidays of that year he procured, by direction of Schulhafer, of the defendant Strauss, at their

place of business, a case which he delivered to Schulhafer; that it was opened in his presence, and contained Hunter and Old Crow caps; that after the holidays he again went to the house of Mr. Haas, obtained a second package, carried it to Schulhafer, where it was opened, but objection being interposed on behalf of Haas, which was sustained, he was not permitted to state what it contained. The witness stated that he obtained another case in the summer of 1902 from a lady at Haas' house, from whom he received the other, but he was not permitted to state its contents. The first case he obtained from Strauss at his place of business. George Kinkel testified that he was employed by Schulhafer; that in 1902 the latter sent him to Strauss' place of business; that he there saw the defendant Haas, and told him that Schulhafer had sent him down there for labels. He said, "All right," and gave him a package, which he carried to Schulhafer, where it was opened in the presence of both of them, and he identified its contents as the imitation labels which had been offered and received in evidence. Both Haas and Strauss were present at the time when this package was delivered to the witness by the defendant Haas at their place of business. The labels were looked over and counted. Monroe Schulhafer testified that in August, 1903, he was in the employ of the defendants Strauss and Haas; that about August 5th of that year Haas gave him some imitation labels to wrap up and deliver to Schulhafer, which he did, and that he delivered them to the latter and saw them unwrapped in his presence. It is clear, therefore, that this testimony tended to the corroboration of Schulhafer, and to prove the guilt of both defendants by connecting each of them with the criminal acts.

It is further claimed that error was committed in receiving in evidence conversations had with one defendant in the absence of the other. The proof is entirely sufficient to show that the defendants in what they did were acting in concert, and, this fact being established, declarations of one were admissible against the other. Both were shown to be active participants in putting up and handling the counterfeit labels and caps for purposes of delivery to the witness Schulhafer, and, the common purpose to commit the offense being established, the declarations of each were admissible in evidence, whether present or absent. This is the rule which obtains where the person charged procures and instigates another to commit a crime; in such case the acts of each are admissible against the other. People v. Peckins, 153 N. Y. 576, 47 N. E. 883. In the present case there is no element of procuring another to commit an offense; consequently neither the doctrine of agency or of partnership applies; here both were principals in the particular transaction. The act was a misdemeanor, and, being a misdemeanor, they were properly tried together, and the declarations of each were admissible in evidence and against the other.

No other questions appear which require consideration at our hands.

It follows that the judgment of conviction was right, and it should therefore be affirmed. All concur.