## 34203. ATLANTIC COAST LINE RAILROAD COMPANY
v. STRICKLAND.

Decided February 14, 1953.

*Bennett, Pedrick & Bennett, Larry E. Pedrick, L. J. Bennet, Symmes & Gibbs, Thomas & Thomas,* for plaintiff in error.

*Herbert Strickland, E. O. Blalock,* contra.

WORRILL, J. ▮ The defendant demurred generally to the petition on the grounds that it did not set out a cause of action against the defendant, because it showed affirmatively that no act or omission on the part of the defendant, its agents, servants, or employees constituted a violation of any duty owing by the defendant or its employees to the plaintiff, the proximate results of which were the plaintiff's injuries, and because it affirmatively appeared from the petition that the sole proximate cause of the plaintiff's injuries was the act of the woman who changed her course and ran into the petitioner after he had stepped to the north edge of the street in a place of safety.

The substance of the plaintiff in error's argument before this court is that, under the allegations of the petition, the plaintiff, after attempting to flag the woman running across the crossing and then to flag the engineer to stop the train, had stepped to a place of safety, out of the path of the running woman and of

the moving train, and had then been catapulted under the train because the woman had suddenly changed her course and run violently into him while he stood in his place of safety; that her act of changing her course so as to run into the plaintiff was the sole proximate cause of the plaintiff's injuries; and that the defendant should not be charged with anticipating that a woman pedestrian would suddenly change her course and violently run into the plaintiff.

The defendant, through its employees, particularly the engineer on the engine involved, was charged by the petition with certain acts of negligence, as set forth in the statement of facts, and it was alleged that such acts constituted the proximate cause of the plaintiff's injuries. As has been so frequently said by both this court and the Supreme Court, the doctrine of proximate cause is one of never-ending perplexity for both the courts and the bar. As plain and complete a statement of the doctrine as may be found anywhere was set forth in *Kleinberg* v. *Lyons,* 39 *Ga. App.* 774, 776 (5) (148 S. E. 535), and was quoted recently by this court in *Peggy Ann of Georgia* v. *Scoggins,* 86 *Ga. App.* 109, 114 (71 S. E. 2d, 89), as follows: "The most generally accepted theory of causation is that of natural and probable consequences; and in order to hold the defendant liable, the evidence must show either that the act of the defendant complained of was the sole occasion of the injury, or that it put in operation other causal forces, such as were the direct, natural, and probable consequences of the original act, or that the intervening agency could have reasonably been anticipated or foreseen by the original wrongdoer." See also the statement quoting from *Southern Ry. Co.* v. *Webb,* 116 *Ga.* 152 (42 S. E. 395), in *Williams* v. *Grier,* 196 *Ga.* 327, 336, 337 (26 S. E. 2d, 698). "But, in order that a party may be liable as for negligence, 'it is not necessary that he should have contemplated or even be able to anticipate the particular consequences which ensued, or the precise injuries sustained by the plaintiff. It is sufficient if, by exercise of reasonable care, the defendant might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected.'" *Henderson* v. *Nolting First Mortgage Corp.,* 184 *Ga.* 724, 737 (193 S. E. 347, 114 A. L. R. 1022), quoting *Mitchell*

v. *Schofield's Sons Co.*, 16 *Ga. App.* 686, 690 (85 S. E. 978);
*Hertz Driv-Ur-Self Stations* v. *Benson*, 83 *Ga. App.* 866, 875 (65
S. E. 2d, 191).

Under the Federal Employers' Liability Act (45 U. S. C. A.,
§ 51, et seq.), contributory negligence on the part of the
injured employee does not bar his recovery. Neither does the
fact that the negligence of another contributed to the injury
sustained by the plaintiff prevent a recovery against the rail-
road. It is well settled in Georgia that one suffering a single
injury or damage as the result of the concurrent acts of negli-
gence of two different persons or corporations may sue such sep-
arate persons or corporations either jointly or severally, and
recovery against one such joint tort-feasor will not be barred
merely because the injury would not have occurred except for
the negligent acts of the other person or corporation not sued.
See, in this connection, Code, § 3-114; *Scearce* v. *Mayor &c. of
Gainesville*, 33 *Ga. App.* 411 (3) (126 S. E. 883); *Smith* v. *Floyd
County*, 36 *Ga. App.* 554 (5) (137 S. E. 646); *Allen* v. *Landers*,
39 *Ga. App.* 264 (1) (146 S. E. 794); *Georgia Power Co.* v. *Kin-
ard*, 47 *Ga. App.* 483, 486 (170 S. E. 688).

Without regard to other allegations of negligence, we think
it sufficient to point out that the plaintiff's petition alleges a
failure on the part of the defendant's servants, the engineer,
and the other brakeman to heed his warning signals and to stop
the train in response thereto. Under his allegations, the plain-
tiff signaled the engineer and other brakeman or switchman in a
manner that, according to the custom and rules of the railroad,
was calculated to inform an alert engine crew that a dangerous
situation had arisen on the crossing, and, if the plaintiff did in
fact so signal the engineer, and, if as alleged, he or the brake-
man or both of them through negligence failed to see or heed
such signaling by the plaintiff, then a recovery by the plaintiff
would have been authorized for any injuries received by him as
a result of that failure of the engineer and other brakeman to
see or heed his signals. The jury was authorized to infer, if the
evidence followed the allegations of the petition, that the engi-
neer was not keeping a constant lookout ahead as he was re-
quired by law and by common sense to do under the circum-
stances, and that from his failure to so look out and his failure

to see or heed the plaintiff's signals he was negligent, and that he was bound to anticipate that such negligence would result in injury or damage to someone or something on or near the crossing. The fact that, under the allegations of the petition, the woman running across the crossing may have likewise been negligent in failing to heed the plaintiff's warning shouts and signals to her, and that her negligence in that particular contributed as a cause of the plaintiff's injuries, does not excuse the defendant from liability under the rules of law set forth above. The trial court did not err in overruling the general demurrers.

■ In paragraph 6 of the petition, the plaintiff alleged that there were certain operating rules of the defendant in force at the time of the injury complained of, which were promulgated for the safety of the defendant's employees and of the public using the defendant's trains and public crossings over its tracks. Among the rules thus set forth, were rules 30 and 31 requiring that the engine bell must be rung when an engine is about to move and while approaching and passing public crossings at grade, and that the whistle must be sounded at all places where required by rule or by law, at all whistling posts and when necessary to prevent accidents. Paragraph 35 alleged that the engineer and fireman in charge of the train failed to ring the bell, blow the whistle, or give any signal of the approach of the train to the crossing; and paragraph 36 alleged that the train was operated across the crossing at a speed of about 5 miles per hour without sounding any warning by bell or otherwise. Paragraph 43 of the petition alleged that the defendant was negligent in failing to constantly toll the bell of the locomotive as the same approached the crossing, in failing to blow the whistle or give any other signal of the train's approach to the crossing, in operating the train over the crossing at 5 miles per hour without sounding any warning by bell or otherwise, and in failing to ring the bell on the engine when it was about to move, and while approaching and passing over the crossing, contrary to the defendant's rule 30.

The defendant demurred specially to these allegations on the ground that the rules referred to therein show on their face that they were designed to protect persons unaware of the approach of trains or cars to the crossings and not designed to protect

employee switchmen who are aware of such movement of the trains; that the incorporation of such rules in the petition is irrelevant and immaterial, and raises no issue of fact relating to the cause of action alleged; and on the ground that it is not shown in the petition how or in what manner the failure of the engineer and fireman to blow the whistle or ring the bell or give any signal of the approach of said cars to the crossing violated any duty resting upon the defendant with respect to the plaintiff, he being fully aware of such approach. The trial court overruled these grounds of demurrer.

It will be noted that nowhere in the petition was it alleged that the failure or omission of the engineer and fireman in the particulars referred to above was negligence with respect to the pedestrian who it was alleged ran into and knocked the plaintiff under the cars. The petition merely alleges that the omission of such warning signals was negligence proximately causing the plaintiff's injuries. While, in the absence of a special demurrer particularly raising the point, we may infer from the facts alleged, and the jury might have inferred from the facts proven, that the plaintiff intended to say that such negligence as to the woman pedestrian proximately caused the plaintiff's injuries, in that it caused the woman pedestrian to be unaware of the presence of and movement of the train over the crossing and thus caused her to continue her heedless dash across the crossing and finally to collide with the plaintiff, propelling him under the freight cars—the petition, as pointed out above, does not so allege. The special demurrers interposed by the defendant expressly raised the question of the sufficiency of the pleadings in regard to these allegations of negligence to show a causal connection between them and the injuries received by the plaintiff. While the inference from the facts alleged may be a relatively simple one, it will not be supplied by the court in the face of the special demurrers filed by the defendant. The defendant was entitled to have the allegations of the petition perfected in response to the special demurrers filed, and the failure of the trial court so to require by an appropriate order sustaining the 5th, 6th, 10th, 11th, 14th, and 15th grounds of the defendant's special demurrers was error requiring a new trial.

It may be contended in this connection that the deficiency in

the petition with regard to these allegations of negligence was cured by the subsequent verdict of the jury, since this deficiency was clearly an amendable one. Diligent search has failed to reveal any authority in Georgia on this point, but the general rule as announced by the leading law encyclopedias seems to be contra to any such contention, the most succinct statement of the rule being: "Generally when a pleading is tested by a demurrer or its equivalent, it must stand or fall by its own averments. After verdict nothing can be read into it from the findings of the jury. Therefore, the doctrine of aider by verdict has been held inapplicable where the sufficiency of the pleading was tested before the verdict by demurrer or equivalent motion, and the objection was not waived. The verdict does not cure material errors made in rulings on the pleadings." 41 Am. Jur., Pleading, § 406. See also the statements to the same effect in 49 C. J., Pleading, § 1281, and the cases cited under note 18 thereunder, p. 871; and 71 C. J. S., Pleading, § 593, et seq.

■ The plaintiff alleged that the defendant's train was so operated that its movement across the crossing cut off his opportunity to retreat from the path of the woman pedestrian and caused him to be knocked under the train by such pedestrian when she collided with him; that there was no other obstacle in the road at that time, except the approaching train, which could have obstructed his retreat from the path of the woman; and that the defendant was negligent in so operating the train as to cut off his retreat and in causing him to be entrapped between the train and the woman. The defendant demurred specially to those allegations and to the specifications of negligence in regard thereto, on the ground that it was not alleged how or in what manner the defendant's train was so operated as to cut off his retreat or how or in what manner the train was so operated as to cause the plaintiff to be knocked under it.

The gist of the plaintiff in error's argument on these grounds of demurrer is that the other allegations of the petition show that the plaintiff's retreat was not cut off by the defendant's train in that, while the woman approached from the east and while the train moved up and closed off any avenue of retreat to the west of the plaintiff's position, he nevertheless could have retreated

either north or south from his position, and out of the woman's path; and that, in the presence of such alleged facts, the plaintiff should have been required to allege more particularly in what manner he contended the train cut off his retreat. It was for the jury to say whether the train was so operated as to cut off the plaintiff's retreat from the path of the woman, and the allegations of the petition sufficiently set out the facts surrounding the injury to inform the defendant as to this contention of the plaintiff. The trial court did not err in overruling these grounds of special demurrer.

■ The plaintiff alleged as a ground of negligence the failure of the engineer to keep a constant and vigilant lookout ahead while approaching and operating across a public crossing, contrary to the provisions of the Code, §§ 94-506 and 94-507. The defendant demurred to this allegation and specification of negligence on the ground that, inasmuch as it appeared from the petition that the plaintiff was aware of the approach of the train to the crossing neither the defendant nor any of its agents owed him any duty to keep a constant and vigilant lookout ahead in approaching said crossing, as provided by those Code sections, and that therefore those sections are irrelevant, immaterial, and do not tend to illustrate or raise any issue constituting a part of the cause of action sought to be alleged by the plaintiff.

In its argument before this court the plaintiff in error contends: "The allegation excepted to was one that charged the defendant with the violation of a law enacted for the protection of the public in the use of public railroad crossings. The plaintiff was not using the railroad crossing as such but in the course of his duties he was on the crossing for the purpose of guiding the movement of the train over the crossing. He was not the type of person contemplated as being protected by the provision of the sections alleged. . . He had full knowledge that the train was passing over the crossing, and so far as he was concerned the railroad company owed him the same duty at the crossing that it owed him anywhere else in the yard, no more and no less."

The general rule in this regard seems to have been well stated in 65 C. J. S. 424, 425, Negligence, § 19, as follows: "In

order that violation of a statute or ordinance may constitute negligence, it is necessary that the duty created thereby should have been for the benefit of, or should have been owed to, the person claiming to have been injured through the violation, that is, he must be a person for whose protection the statute or ordinance was designed. It has been held that, even though the person injured as the result of nonperformance of a statutory duty by defendant is not within the class for whose protection such duty was imposed, the violation of the statute is evidence of negligence. . . The nature of the duty imposed by a statute and the benefits resulting from its performance usually determine what persons are entitled to invoke its protection, but the fact that certain classes of persons were intended to be primarily protected by the discharge of a statutory duty will not necessarily prevent others, neither named nor intended as primary beneficiaries, from maintaining an action to recover for injuries caused by the violation of such legislative command. . .

"While the statute or ordinance, violation of which may constitute negligence, may create a duty owing to the injured individual as such, it is not necessary that he should have any such special right, but it is sufficient that the duty was owing to him as a member of a class or as one of the individuals composing the general public. In the latter class of cases, however, the injured person can predicate negligence on violation of the statute or ordinance only where it is made to appear that the circumstances were such as to give him the right to insist on the performance of the duty to himself personally, and that he has sustained some special injury by reason of nonperformance. . . Whether a liability arising from the breach of a duty prescribed by a statute or ordinance accrues for the benefit of an individual specially injured thereby or whether such liability is exclusively of a public character must depend on the nature of the duty enjoined and the benefits to be derived from its performance."

In Atchison, T. & S. F. R. Co. v. Reesman, 60 Fed. 370, it appeared that the plaintiff, a brakeman in the employ of the defendant, was injured when its train was derailed as the result of striking an animal on the tracks. As one of the grounds of negligence claimed against the defendant, the plaintiff alleged

that it had permitted the cattle fences required by Missouri law to be maintained along its right of way to become and remain out of repair, so that the animal (a steer) had strayed onto the track and caused the derailment. The defendant claimed that the fence statute on which the plaintiff relied was enacted for the benefit of the proprietors of adjoining lands, and that the plaintiff employee of the railroad took nothing by reason of the defendant's failure to comply with the terms of the statute. In answering that contention, and in holding the defendant liable on that ground of negligence, Mr. Justice Brewer, writing the opinion for the Circuit Court of Appeals, said (p. 373): "It is doubtless true that, when a right is given by statute, only those to whom the right is in terms given can avail themselves of its benefits, but it does not follow that when a duty is so imposed a violation of that duty exposes the wrongdoer to liability to no person other than those specifically named in the statute. On the contrary, it is not unreasonable to say that every party who suffers injury by reason of the violation of any duty is entitled to recover for such injuries. At any rate, it is clear that the fact that certain classes of persons were intended to be primarily protected by the discharge of a statutory duty will not necessarily prevent others, neither named nor intended as primary beneficiaries, from maintaining an action to recover for injuries caused by the violation of such legislative command. It may well be said that, though primarily intended for the benefit of one class, it was also intended for the protection of all who need such protection."

In Huckleberry v. Missouri Pac. R. Co., 324 Mo. 1025 (26 S. W. 2d, 980), the plaintiff's minor son was killed when gasoline, spilled along the defendant's right of way from overturned tank cars, was ignited and exploded by sparks from the defendant's engine or wrecking crane. The report of that case showed that the plaintiff's son had gone upon the defendant's right of way in company with some older men who (according to the plaintiff's evidence) at the invitation of the defendant's employees were scooping up the spilled gasoline from holes and ditches in which it had been allowed to collect along the right of way, contrary to certain rules of the Interstate Commerce Commission. The plaintiff introduced in evidence the rules of

the Interstate Commerce Commission regulating the disposition of combustible, inflammable, or explosive substances spilled on the rights of way of railroads as a result of derailments or wrecks. The violation of these rules was claimed as one of the proximate causes of the death of the plaintiff's son. As against the defendant's contention that the aforementioned rules of the Interstate Commerce Commission were promulgated for the protection of the public in general or at most for those engaged in interstate commerce, and that the deceased was at most only a member of the general public and the violation of such rules could not give the plaintiff, the deceased's mother, a cause of action, it was held that, though the rules were promulgated primarily for the benefit and intended as an aid to interstate commerce, the deceased came within the range of their operation, and the violation of the rules was a proper element of the plaintiff's cause of action for the death of her son.

In Fairport R. Co. *v.* Meredith, 292 U. S. 589 (54 S. Ct. 826, 78 L. ed. 1446), the Supreme Court held that the Safety Appliance Acts, while enacted primarily for the benefit of employees and passengers of railroads in interstate commerce, were also enacted for the benefit of the general public, such as, in that case, one using a crossing over the railroad and injured by a collision with the defendant's train; and it was further held that the plaintiff might rely on an allegation and claim of negligence on the part of the defendant in violating the Safety Appliance Acts in its failure to provide and maintain, for service on the train with which the plaintiff collided, power brakes as required by the said acts. And in Brady *v.* Terminal R. Assn., 303 U. S. 10 (58 Sup. Ct. 426, 82 L. ed. 614), the violation of the Safety Appliance Acts in the failure of the defendant to provide secure grab irons on a freight car was held to give the plaintiff a cause of action under the provisions of those acts, even though the plaintiff was not an employee of the defendant, where it appeared that he was lawfully on the car and using the faulty grab iron in the course of his duty to inspect the car.

Under the foregoing authorities, it can not be said that the plaintiff was any less entitled to the protection of the Code sections cited in the petition than any other member of the public. Those acts, which have been codified as §§ 94-506 and 94-507

of the Code of 1933 were enacted primarily for the protection of the general public and particularly for persons using railroad crossings or persons otherwise lawfully on such crossings. The fact that the plaintiff was also an employee of the defendant did not make him any less entitled to the protection of those Code sections than anyone else. He was, so far as the duty of the other employees operating the cars across the crossing was concerned, a member of the public entitled to the fullest protection afforded by the law and their consequent duty to keep a constant and vigilant lookout. This ground of the demurrer was without merit, and the trial court did not err in overruling it.

■ The plaintiff, in his petition, charged both the engineer and fireman with many acts of negligence, chief among them being the failure of each individually to keep a constant and vigilant lookout ahead, to observe the plaintiff's signal, and to stop the train when it became obvious to them or should have become apparent to them that a dangerous situation had developed on the crossing. On the trial of the issue, the plaintiff introduced no evidence relating to any act or omission of the fireman. It appeared from the pleadings and the evidence that the engine was headed northward on the tracks with five box cars coupled in front, which were being pushed northwardly along the tracks. The plaintiff was on the crossing to the east of the tracks on which the engine and cars were moving, and all of the action which he claimed the engineer and fireman should have observed took place to the east of those tracks; and, further, the engine and cars were moving over a cross-over track from one track to the track just to the west thereof. The engineer's place was on the right where he had a view of the crossing on the east of the movement. The fireman testified in behalf of the defendant that he was at his place or seat on the left of the engine looking forward, but that because of the string of box cars coupled in front of the engine he had no view of the crossing east of the tracks on which the train was being operated. At the conclusion of the evidence the defendant made an oral motion that the court exclude from the jury's consideration all charges of negligence with respect to the fireman. It appears that this motion was made by the defendant's counsel in

the presence of the jury, and in overruling the motion the trial judge said: "I think that is all for the jury to consider; it may be circumstantial evidence, but it is a circumstance for the jury to consider; I will overrule your motion, Mr. Pedrick, and give you an exception." To that order the defendant excepted pendente lite.

The defendant also assigned error, in ground 4 of its motion for new trial, on the ruling of the court upon that ground. In ground 5 of the motion the plaintiff excepted to a portion of the charge of the court, as follows: "The plaintiff contends, gentlemen, that the employees of the defendant violated certain rules of the defendant company, and that such alleged violations of its alleged rules proximately contributed to the plaintiff's alleged injury. I charge you, gentlemen, that a railroad company may promulgate reasonable rules for the government of its employees and for the operation of its employees and for the operation of its trains, and such rules are binding upon the employees if such rules are reasonable. If you find by a preponderance of the evidence that such rules were reasonable and that there was a violation of such rules by the employees of defendant company, you would then be authorized to determine whether such alleged violation of such rules constituted negligence, and if so whether same proximately contributed to the plaintiff's alleged injury." This charge is alleged to have been error because it had the effect of authorizing the jury to consider all of the rules of the defendant company alleged in the petition, except those previously eliminated by the charge, and authorized the jury to consider whether there had been a violation of rule 1004 relating to the duty of the fireman of keeping a lookout, when there was no evidence sufficient to authorize a finding that the fireman had violated that rule, and because such charge had the effect of submitting to the jury an issue which was wholly unsupported by evidence.

Ground 6 of the motion for new trial complains that the verdict is without evidence to support it, because there was no evidence to support the allegations in the petition respecting the negligence of the fireman, and because the court in no way eliminated from the consideration of the jury such alleged acts of negligence on the part of the fireman, though it was requested to do so.

While it is not error merely to state to the jury the contentions of the parties or read to them the petition and the answer, even though some of the contentions or issues raised by the petition be not supported by proof (*Southern Ry. Co.* v. *Wright,* 6 *Ga. App.* 172 (5), 64 S. E. 703; *Matthews & Co.* v. *Seaboard Air-Line Ry.,* 17 *Ga. App.* 664, 87 S. E. 1097; *Armour & Co.* v. *Roberts,* 63 *Ga. App.* 846 (1), 847, 12 S. E. 2d, 376; *Moffett* v. *McCurry,* 84 *Ga. App.* 853 (3), 858, 67 S. E. 2d, 807)—it is quite another thing to charge the jury the law with respect to a contention. *Moffett* v. *McCurry,* supra; *Atlanta, Knoxville &c. Ry.* v. *Gardner,* 122 *Ga.* 82, 93 (8) (49 S. E. 818). The general rule is that a charge to the jury on the law respecting the issues in the case must be adjusted to both the pleadings and the evidence (*Southern Express Co.* v. *Newby,* 36 *Ga.* 635 (5), 648, 91 Am. D. 783; *McDonald* v. *DeLaPerriere,* 178 *Ga.* 54 (4), 172 S. E. 1; *Smoot* v. *Alexander,* 188 *Ga.* 203, 204 (4), 3 S. E. 2d, 593); and an instruction as to the law on a material issue which is unauthorized by the evidence is improper, and, if it is not apparent that the jury could not have been misled thereby, it is cause for a new trial. *Culberson* v. *Alabama Construction Co.,* 127 *Ga.* 599 (1) (56 S. E. 765); *Gaskins* v. *Gaskins,* 145 *Ga.* 806 (1) (89 S. E. 1080); *Citizens & Southern Bank* v. *Kontz,* 185 *Ga.* 131 (6), 147 (194 S. E. 536); *Davis* v. *State,* 190 *Ga.* 100 (4) (8 S. E. 2d, 394); *Armour* v. *Lunsford,* 192 *Ga.* 598 (3) (15 S. E. 2d, 886); *Robertson* v. *Abernathy,* 192 *Ga.* 694, 698 (4a) (16 S. E. 2d, 584.)

The record in the instant case shows that the trial judge had, prior to charging as complained of in ground 5 of the motion for new trial, by appropriate instructions, withdrawn from the consideration of the jury three rules of the defendant which were set out in the petition. When viewed in its context, the charge complained of had the effect of submitting for the jury's consideration the question of whether or not the defendant's fireman had been negligent in violating rule 1004 relating to the duty of the fireman to keep a lookout ahead when operating in cities and towns and over and along streets in such cities and towns. The jury might well have understood—from the comment of the trial judge, in overruling the defendant's motion to withdraw from the jury's consideration all questions relating to the

fireman's negligence, and from the portion of its charge withdrawing from their consideration three of the rules of the defendant railroad company, together with the charge complained of in ground 5 of the motion for a new trial—that they were authorized to find for the plaintiff based on the negligence of the fireman in violating the defendant's rule 1004.

The evidence in this case was in sharp conflict as to many material issues. Under one view of the evidence, the jury would have been authorized to find that the engineer could not have seen the plaintiff or his signals from the crossing and consequently that the engineer was not negligent in the particulars alleged. The evidence was likewise in such conflict as to authorize a finding that the other brakeman or flagman was not negligent in any of the ways alleged. Some of the jury may have been unwilling to find a verdict for the plaintiff based solely on the negligence of the engineer or on the negligence of the other brakeman or flagman, and the jury may well have concluded from the context of the charge that they were required, under the evidence, to find the fireman guilty of negligence in violating rule 1004. As we have pointed out, the evidence was wholly insufficient to authorize a verdict based on negligence of the fireman; and while, under the authority of the statement made in the latter part of the 10th headnote in the case of *Western & Atlantic R.* v. *Gray,* 172 *Ga.* 286 (157 S. E. 482), and cases citing and quoting that statement, it was not error for the trial court to refuse the plaintiff's motion to withdraw from the jury's consideration the allegations of negligence respecting the violation of rule 1004 as complained of in the exceptions pendente lite and in the 4th ground of the motion for a new trial—it was error to so charge the jury as to submit to their consideration a ground of negligence alleged in the petition, but not supported by the evidence, and to charge the law respecting that ground of negligence. For these reasons the trial court erred in overruling the 5th ground of the motion for a new trial. See, in this connection, *Butt* v. *Maddox,* 7 *Ga.* 495 (3), 503; *Henderson* v. *Stiles,* 14 *Ga.* 135 (1); *Webb* v. *Robinson,* 14 *Ga.* 216 (1), 221; *McWhorter* v. *O'Neal,* 123 *Ga.* 247 (2), 250 (51 S. E. 288); *Youmans Jewelry Co.* v. *Blackshear Bank,* 141 *Ga.* 357 (3), 360 (80 S. E. 1005); *Atlantic Coast Line R. Co.*

v. *McElmurray Bros.*, 14 *Ga. App.* 196 (8), 200 (80 S. E. 680).

■ Complaint is made, in the 7th ground of the motion for new trial, as to the portion of the charge which submitted to the jury the question of whether the defendant had violated certain rules of the Interstate Commerce Commission. The record shows that there were no pleadings or evidence raising an issue as to the violation of such rules. A charge which injects into the case and submits for the jury's consideration issues not made by the pleadings or the evidence tends to confuse the jury as to the true issue in the case, is probably harmful to the defendant, and is error requiring the grant of a new trial. *Citizens Bank of Roswell* v. *Reese*, 145 *Ga.* 110 (2) (88 S. E. 570); *Clark* v. *Griffon*, 207 *Ga.* 255 (3) (61 S. E. 2d, 128); *Morris* v. *Stanford*, 53 *Ga. App.* 722 (1) (187 S. E. 159); *Ingram & LeGrand Lumber Co.* v. *McAllister*, 62 *Ga. App.* 50 (7 S. E. 2d, 784); *Ergle* v. *Davidson*, 69 *Ga. App.* 102 (24 S. E. 2d, 810); *Parker* v. *Ford*, 70 *Ga. App.* 714 (1) (29 S. E. 2d, 184); *Atlantic Co.* v. *Taylor*, 82 *Ga. App.* 361 (5) (61 S. E. 2d, 204). This is particularly true where the evidence on the issues really involved is conflicting. *Clark* v. *Griffon*, supra.

In this connection, the plaintiff contends that the verdict for the plaintiff was demanded and that any technical error in pleading or in the charge of the court was not harmful to the defendant and should not work a reversal of the case. While we do not undertake at this point to pass upon the general grounds of the motion for new trial, inasmuch as the case is to be sent back for another trial, we are not able under the record in this case to hold as a matter of law that the verdict for the plaintiff was demanded. As we have already pointed out, there were numerous direct conflicts in the evidence which the jury were called upon to resolve, and as we view the case a verdict for either party would have been authorized under the evidence. As said in *Western & Atlantic R. Co.* v. *Sellers*, 15 *Ga. App.* 369 (1a) (83 S. E. 445), "When instructions not authorized by the pleadings are given, it is to be presumed that the complaining party was injured, because it must be assumed that he relied upon the fact that the issues would be confined to the statements of the pleadings." See also *Barton* v. *State*, 79 *Ga. App.* 380, 387 (53 S. E. 2d, 707); *Nelson* v. *Huber & Huber Express*, 79 *Ga. App.* 721, 723 (54 S. E. 2d, 462).

We recognize, of course, as further contended by the defendant in error, that the Federal Employers' Liability Act supersedes all State substantive law on the subject of injuries to trainmen engaged in interstate commerce; but the rule as applied here is a procedural or practice matter, and, when the injured trainman chooses to bring his case in a State court, he must take the procedure therein as he finds it. The trial court erred in refusing a new trial on the 7th ground of the motion.

■ Ground 8 of the amended motion for new trial complains of a charge, as follows: "Statements made out of court, gentlemen, and not under oath, are not evidence, but may be considered by you on the question of the credibility of the witness"— because such charge had the effect of completely nullifying the testimony of one of the defendant's witnesses, who testified as to certain statements made to him by the plaintiff about a week after the injury occurred, and had the same effect also as to a written statement introduced in evidence by the defendant purportedly signed by the plaintiff; because it was an incorrect statement of the law relating to statements and declarations of a party, such statements and declarations always being admissible as evidence against such party, when relevant to the issues on trial; and because such charge was particularly harmful to the defendant since the only statements of a witness made out of court were introduced by the defendant and related to statements made by the plaintiff himself.

The charge complained of was erroneous for the reasons stated in this ground. The defendant introduced evidence of statements by the plaintiff to one of the defendant's agents about a week after the injury occurred. These statements of the plaintiff, if believed by the jury, would have authorized a finding that the injury to the plaintiff occurred in a manner entirely different from the way he claimed on the trial of the case that it occurred and in a manner which would have authorized a finding that the defendant was not negligent. Proof of explicit voluntary admissions by the opposite party against his interest are prima facie *evidence* of the facts admitted and, unless explained or denied by *other evidence,* proof of such admission may, of itself, authorize a jury to find in conformity with such admission. *William Hester Marble Co.* v. *Walton,* 22 *Ga. App.* 433

(4) (96 S. E. 269); *Scott* v. *Kelly-Springfield Tire Co.*, 33 *Ga. App.* 297 (1) (125 S. E. 773). This error was presumptively harmful and requires the grant of a new trial.

■ Complaint is made in ground 9 of the motion as to a portion of the charge, which submitted to the jury the question of whether or not the defendant's engineer was guilty of negligence in failing to blow the whistle on the locomotive when it was approaching the crossing. Ground 10 complains of the admission in evidence, over the defendant's objection, of rules 30 and 31 of the defendant relating to the duty of the engineer to ring the bell on the locomotive and blow the whistle when approaching a crossing. It is contended that the charge submitting the question of negligence in that regard was unauthorized, because there is no duty on the part of railroad employees to warn a person of the approach of the train where he is already aware of such approach; and that for the same reason the admission in evidence of the rules of the defendant was erroneous.

In view of what was said in division 2 of this opinion, it was error to admit such rules in evidence and to so charge the jury, where there were no allegations and no evidence to connect the failure to ring the bell and the failure to blow the whistle with the injury received by the plaintiff. For these reasons the trial court erred in overruling the 9th and 10th grounds of the motion for a new trial.

■ Ground 11 of the motion complains that the verdict is so excessive as to show gross mistake, bias, or prejudice on the part of the jury. Inasmuch as, under the rulings made in the 2nd, 5th, 6th, and 8th divisions of this opinion, the case is to be tried again, this question is not considered, since it may not arise on another trial.

■ The general grounds of the motion for new trial are not considered, inasmuch as the case is to be tried again, and the evidence on another trial may not correspond to that introduced on the former trial.

*Judgment reversed. Sutton, C. J., and Felton, J., concur.*