A90A0188. JOHN D. ROBINSON CORPORATION v. SOUTHERN MARINE & INDUSTRIAL SUPPLY COMPANY et al.
(395 SE2d 837)

Pope, Judge.

Southern Marine & Industrial Supply Company and Neff McIntosh (who owned Southern Marine) commenced this libel action against defendant John D. Robinson Corporation, a business competitor, for letters written by John Carellas, an employee of defendant who formerly worked for Southern Marine. The jury awarded South-

ern Marine $250,000 actual damages, and McIntosh $1,000 actual damages along with $225,000 punitive damages. This appeal followed.

One of the letters, mailed to ATPAC, a Greek agent for ship suppliers, contained the following:

"I am sorry I had to write you this letter and let you know that I am no longer working for Southern Marine Supply Co. The reason is that since Mr. Ford sold the company two (2) years ago, the new owners are Neff McIntosh and family. They knew nothing of the Ship Chandlery business.

"This company is not the same Southern Marine Supply Co. as you knew it in the past. It is altogether different. After fourteen (14) years working, I was sales manager for the new owners. They do not know how to supply the Greek ships properly. I was the only one who supplied the Greek ships properly. I was the only one who supplied the Greek ships personally for Southern Marine Supply Co. for all of the fourteen (14) years that I worked there.

"Last spring, when Neff McIntosh went to Sweden, Norway and London, England, I asked Mr. McIntosh to visit Greece and meet with the ship owners of ATPAC. He refused and said he did not want to see the Greeks.

"I was unhappy with the new owners, so I left Southern Marine Supply Co. and went to work for John D. Robinson Corporation, a good Ship Chandler in Savannah. I will be able to do the same as Southern Marine Supply Co. for your services.

"I have engaged the services of ATPAC in London for my new company. Southern Marine Supply Co. would not use the services of ATPAC in London but preferred using C. R. Knight as their agent. I am sure that if C. R. Knight were in Greece, ATPAC would not have Southern Marine Supply Co.'s business.

"The new owners do want the Greek ship business because they buy good. Again, I am sorry to write you this letter, but I feel like you should know about the new owners. I talked to Mr. Ford, the old owner, about this condition and he was surprised at the way they are trying to run the Ship Chandlery business.

"Hoping to hear from you in the near future. I remain yours truly,

John B. Carellas
JOHN D. ROBINSON CORP."

The letter to ATPAC was dated February 13, 1985. A member of ATPAC brought it to the attention of an agent for Southern Marine

by mailing him a copy of the letter. Evidence was presented that a shorter version of the letter was also sent to fourteen other Greek ship owners.

1. To be actionable as libel, a statement must be false, malicious and injurious. OCGA § 51-5-1. The evidence in this case was sufficient to create an issue for the jury as to all three elements of libel and thus the trial court did not err in denying defendant's motion for directed verdict or motion for judgment notwithstanding the verdict.

The letter at issue went far beyond merely expressing an opinion that John D. Robinson Corporation could provide better services than Southern Marine. Evidence was presented that several statements of purported fact were false. First, the author of the letter states, "[The new owner] knew nothing of the Ship Chandlery business." Evidence was presented that the former owner trained the new owner in the operation of the business and, at the time the letter was written, the new owner had been president of Southern Marine for two years. The owner of John D. Robinson Corporation admitted the statement that Southern Marine's owner knew nothing about the business was not correct. The author also states "I was the only one who supplied the Greek ships personally for Southern Marine Supply Co. for all of the fourteen (14) years that I worked there." The evidence shows that both before and after the change of ownership in the company, others besides the author supplied Greek ships. Finally, the author states "I talked to Mr. Ford, the old owner, . . . and he was surprised at the way [the new owners] are trying to run the Ship Chandlery business." At trial Mr. Ford denied making the statement and testified he did not agree with the remarks made in the letter.

Evidence was also presented from which the jury could conclude that the author of the letter was motivated by malice toward his former employer. Moreover, "[a]s to proof of malice, proof that the writing is false, and that it maligns the *private character or mercantile standing of another*, is itself evidence of legal malice. [Cits.]" *Montgomery v. Pacific & Southern Co.*, 131 Ga. App. 712, 717 (206 SE2d 631) (1974). Evidence was presented to show Southern Marine's business had been injured by the letter. Statements which tend to injure one in his trade, occupation or business are libelous per se. *Walker v. Sheehan*, 80 Ga. App. 606 (2) (56 SE2d 628) (1949). At the least the issue of whether the words used were defamatory was subject to more than one interpretation and thus was an issue for jury determination. *Southern Bell Tel. &c. Co. v. Coastal Transmission Svc.*, 167 Ga. App. 611 (2a) (307 SE2d 83) (1983). Thus, defendant was not entitled to directed verdict.

2. Defendant also argues it is entitled to judgment on the ground that no evidence was presented that any recipient read the letters in question or that its meaning was understood by the readers to im-

pugn the reputation of the plaintiffs. First we note that defendant never argued this ground in making its motions. "A motion for directed verdict shall state the specific grounds therefor." OCGA § 9-11-50 (a). Secondly, evidence was presented that a client of Southern Marine who was a member of ATPAC, the addressee of Carellas' February 13 letter, forwarded a copy of the letter to an agent of Southern Marine and told the agent he thought he would be interested in knowing he had received a "crazy" letter from Carellas that said bad things about McIntosh and Southern Marine. Thus, circumstantial evidence was presented to show the letter had been received and interpreted derogatorily.

3. Neither is defendant entitled to judgment in its favor on the ground that the employer had no knowledge of the contents of the letters written by employee Carellas before they were mailed. Defendant was liable to plaintiffs for the libelous statements of its employee under the rule of respondeat superior. *Ray v. Henco Electronics*, 156 Ga. App. 394 (274 SE2d 602) (1980), cited by the defendant, is distinguishable because the employer in that case was not held liable for the libelous remarks of the employee because those remarks were not published to a third party. The opinion notes that the rule of respondeat superior is generally applicable in libel cases. Id. at (1). Even the malicious intent of the employee is imputable to the employer in a libel case. *Atlanta Journal Co. v. Doyal*, 82 Ga. App. 321 (4c) (60 SE2d 802) (1950).

4. Defendant argues the award to plaintiff McIntosh of $225,000 in punitive damages, when only $1,000 was awarded him for actual damages, was excessive and in violation of the prohibition against excessive fines of the Eighth Amendment to the United States Constitution and the Due Process Clause of the Fourteenth Amendment. "There is no merit to [defendant's] contention that an award of punitive damages violates the excessive fines clause of the Eighth Amendment to the United States Constitution. [See] *Browning-Ferris Industries of Vermont, Inc. v. Kelso*, 492 U. S. ___ [109 SC 2909, 106 LE2d 219]." *Hospital Auth. of Gwinnett County v. Jones*, 259 Ga. 759, 762 (3) (386 SE2d 120) (1989). This State's statutory scheme providing for the award of punitive damages based on the "enlightened conscience of the jury" which is checked and balanced by the general standard of review of damages awards set out in OCGA § 51-12-12 and OCGA § 5-5-20 does not deny due process or provide inadequate procedural safeguards for imposition of punitive damages. Id. at (5).

As in *Hospital Auth. of Gwinnett County*, we hold the award in this case is not excessive as a matter of law. Statements which tend to injure one in his trade or business are libelous per se. *Walker v. Sheehan*, 80 Ga. App. 606. Where, as here, evidence was presented from which the jury could find libel per se, the plaintiff may recover

general damages without a showing of special damages. See *Weatherholt v. Howard*, 143 Ga. 41 (84 SE 119) (1915). Here, the jury awarded Mr. McIntosh general damages of $1,000. The award of punitive damages need not bear a relationship to the award of actual damages because punitives in this case were not awarded to compensate for wounded feelings but to deter future conduct. "A deterrence award is based on factors, for the most part, unrelated to the injury to any particular victim, and is limited only by the collective conscience of the jury." *Hospital Auth. of Gwinnett County*, supra at 762. Because evidence was presented from which the jury could find defendant's employee acted with malicious intent,[1] we do not conclude that the award of $225,000 in punitive damages is inordinately large or "may be set aside as reflecting undue passion and prejudice rather than an enlightened conscience . . . ." Id. at n. 9.

5. We reject defendant's argument that the verdict of $250,000 actual damages to plaintiff Southern Marine, with no award of punitive damages, is inconsistent with the award of $1,000 actual damages and $225,000 in punitive damages to plaintiff McIntosh. This is not a case in which one plaintiff was awarded damages but the other was not. Cf. *Groover v. Dickey*, 173 Ga. App. 73 (325 SE2d 617) (1984). The verdicts in this case were not self-contradictory because both plaintiffs were awarded damages. The verdicts were not inconsistent with each other and do not manifest that the jury reached conflicting opinions on the same evidence or the same witnesses. Cf. *Bagwell v. Sportsman Camping Centers*, 130 Ga. App. 888 (204 SE2d 794) (1974), on appeal after remand for retrial, 140 Ga. App. 312 (231 SE2d 118) (1976). Indeed, the verdict demonstrates that the jury understood the economic loss was sustained by the corporation while only general damage to reputation was sustained by the individual plaintiff. Nevertheless, the verdict indicates the jury found sufficient evidence of malicious intent to impose punitive damages against defendant to deter future conduct.

6. The trial court did not err in admitting the list of fourteen shipping companies to which letters were sent. Defendant's president admitted in his testimony that the list was produced to plaintiffs and plaintiffs' attorney during the pre-trial discovery period as the list of companies to which Carellas sent the shorter version of his letter.

7. We reject defendant's argument that the trial court erred in permitting plaintiff McIntosh and plaintiffs' expert witness to testify

---

[1] The evidence showed the author of the letters, John Carellas, exhibited anger and resentment against plaintiff McIntosh when Carellas resigned from his job at Southern Marine. Plaintiff McIntosh testified Carellas physically threatened him on board a Greek ship when Carellas boarded the ship in hopes of making a sale of supplies for his new employer when Carellas discoverd McIntosh was already on board servicing the ship.

as to damages from lost profits because such damages were too remote and speculative. Here, evidence was presented that Carellas acted maliciously with the intent to deprive plaintiff of the profits from doing business with Greek shipping clients. "When a tort is committed . . . with knowledge and for the purpose of depriving the plaintiff of certain contemplated benefits, the remote damages occasioned thereby become a proper subject for the consideration of the jury." OCGA § 51-12-10. Here, testimony concerning lost profits did take into consideration the reasonably expected expenses of prospective business in that both witnesses testified that because general overhead expenses of the company were already being met, the plaintiff company could expect at least as great a profit margin on lost sales as it was making on actual sales. Cf. *Bennett v. Smith*, 152 Ga. App. 841 (264 SE2d 233) (1979). Defendant argues that the witnesses' assumption that, but for the letter, ship owners would have continued to buy from Southern Marine after the letter as before the letter is purely speculative. However, this issue did not disqualify the testimony but was merely a matter of credibility on which defendant had ample opportunity to discredit the witnesses on cross-examination. Moreover, defendant moved to strike all the testimony as to calculation of special damages on the ground it was speculative. An objection to strike evidence in its entirety without separating the admissible from the inadmissible portion is too broad and the trial court does not err in denying such a motion. See *Mark Inn v. Dept. of Transp.*, 174 Ga. App. 420 (1) (330 SE2d 134) (1985).

8. We reject defendant's argument that the trial court erred in permitting plaintiffs' expert witness to respond to an improper hypothetical question posed by plaintiffs' attorney because it contained information and assumptions of fact not in evidence. The record shows the trial court did strike the testimony given in response to the objectionable question and instructed the jury to disregard the answer. No objection was made by defendant to the reframed question posed by plaintiffs' attorney or the witnesses' response to it.

9. Defendant's attorney asked plaintiffs' expert witness whether it was his opinion that the damages he had calculated were caused by the writing of one letter. The court properly sustained plaintiffs' objection to the question because the evidence showed fourteen other companies had received letters similar to the one written to ATPAC.

10. We find no error in the charge instructing the jury on the obligations imposed by federal law on Southern Marine for paying profit-sharing plan benefits to resigning employees. The legal duties and obligations for payment of benefits related to the justifiability of actions taken by Southern Marine when Carellas resigned and to the evidence of malice or hostility held by Carellas against Southern Marine.

11. We find no error in the trial court's charge on the standard for recovering lost profits or in the charge, based on OCGA § 51-12-10, that even damages otherwise too remote to recover may be recovered where a tort is committed for the purpose of depriving the plaintiff of such benefits.

12. Where, as here, the jury was given complete and accurate instructions as to the credibility of witnesses, the trial judge did not err in refusing to give the requested charge that the jury may disregard the plaintiffs' evidence if it believes the evidence is magnified or exaggerated. See *Brewer v. Henson*, 96 Ga. App. 501 (5) (100 SE2d 661) (1957).

13. The defendant was not entitled to judgment on the issue of punitive damages. Ample evidence of aggravated circumstances and malicious intent was presented to permit a recovery of punitive damages pursuant to OCGA § 51-12-5.

14. We do find error, however, in the charge to the jury. The trial court charged the jury, "Should you find by a preponderance of the evidence that John Carellas read orally on the telephone or otherwise the alleged libelous charges about the Plaintiff contained in his letters to ATPAC and other Greek shipping companies, you may find that these oral statements constituted libel." The charge was correctly based on the rule that "oral communication of a written defamation constitutes libel." *Garren v. Southland Corp.*, 235 Ga. 784, 787 (221 SE2d 571) (1976). However, we agree with defendant that insufficient evidence was presented to show Carellas had repeated the libelous statements of his letters over the telephone. The record contains no probative evidence of any oral communication of the written defamation, but only mere speculation that such communications occurred. The inapplicable charge did not assume that the evidence showed oral communication, but instructed the jury what law to apply *if* it found by a preponderance of the evidence that such communication was made. However, while the trial court's charge in the instant case correctly made no assumption that the evidence *did* show any oral communications of a written defamation, the trial court nevertheless erred in charging on that issue because there was *no* probative evidence from which the jury would have been authorized to find that such oral communications had occurred. An inapplicable charge, even though it is a proper statement of the law, may still constitute harmful error. See *Ross v. State*, 194 Ga. 514, 515 (22 SE2d 148) (1942).

A determination of whether an inapplicable charge had a harmful effect in a given case is not dependent upon phraseology, but upon whether it is likely that the inapplicable charge misled the jury and affected the verdict. *Service Wholesale Co. v. Reese*, 91 Ga. App. 366, 368 (3) (85 SE2d 625) (1955). By giving a charge on an inapplicable principle of law, the trial court can mislead the jury into the errone-

ous belief that it would be authorized, under the evidence, to find the facts to which that inapplicable charge refers and to return its verdict based upon a legal theory that is, in reality, not supported by the evidence of record. Thus, by instructing the jury on the issue of oral communication of a written defamation *if* it found that such communications occurred, the trial court implicitly instructed the jury that it would be *authorized* to find that such communications had occurred, and the question to be resolved is whether this inapplicable charge was likely to have misled the jury and affected the verdict. "Instructions inapplicable to the pleadings and the evidence should not be given to the jury; and where such instructions submit to the jury an issue and a theory not supported by the pleadings and evidence, a new trial will be granted." *Hand v. Matthews*, 153 Ga. 75 (3) (111 SE 408) (1921). "[I]f by the instructions the jury might reasonably be drawn away from the true issues in dispute to the prejudice of parties, the giving in charge of such inapplicable principles would be reversible error ([cits.]) . . . ." *Commercial Bank of Jasper v. Dasher*, 24 Ga. App. 736 (102 SE 177) (1919). "[A]n instruction as to the law on a material issue which is unauthorized by the evidence is improper, and, if it is not apparent that the jury could not have been misled thereby, it is cause for a new trial. [Cits.]" *Atlantic Coast Line R. Co. v. Strickland*, 87 Ga. App. 596, 613 (5) (74 SE2d 897) (1953).

It is not apparent that the jury in the instant case could *not* have been misled by the inapplicable charge on oral communication of a written defamation. The inapplicable charge could have misled the jury as to both liability and damages. For example, it is possible that the jury may have found that the written defamations were otherwise privileged, but nevertheless returned its verdict based upon a determination that the purported oral defamations demonstrated malicious use of the privilege. On the other hand, absent the erroneous instruction, the jury might have found that, although liability arose from the written defamations, a recovery of punitive damages was not authorized. In other words, if the trial court had *not* charged on the oral communication of a written defamation, the jury might have found that there was *no* liability for the written defamations or that the written defamations warranted a *lesser* recovery of damages. The trial court did, however, give the inapplicable charge and, if the verdict that was returned in the instant case was based upon the jury's consideration of the oral communication of a written defamation, then the verdict was prejudicedly affected by the inapplicable charge. Thus, a new trial is warranted. See *Atlantic Coast Line R. Co. v. Strickland*, supra at 613 (5).

*Judgment reversed. Carley, C. J., McMurray, P. J., Banke, P. J., Birdsong, Sognier and Cooper, JJ., concur. Beasley, J., concurs in part and dissents in part. Deen, P. J., dissents.*

BEASLEY, Judge, concurring in part and dissenting in part.

I concur in all except Division 14. The error in the instructions does not require a retrial because of the high improbability of its misleading the jury. The jury had all of the evidence before it and could see as well as, if not better than, we can that there was no evidence of oral communication of the defamation over the phone. That makes the charge of no significant account.

The judge did not intimate that there *was* such evidence, but only gave an instruction with regard to what to do if there *was*. He specifically reminded the jury that such a showing would have to be by a preponderance of the evidence. This affirmed the general charge, which clearly and unambiguously counseled on plaintiffs' burden of proof, the meaning of which the court had carefully explained.

The court had also instructed about the nature of evidence and cautioned against employing unfounded inferences or speculation. In its charge it stated: "You're dealing solely in this case at this time with the question of libel . . . should you find the letters were not libels or they were privileged, the Defendant is entitled to a verdict in the case." The part of the charge objected to which is quoted in the majority opinion as beginning "[S]hould you find . . ." was preceded by: "All written communication or written defamation constitutes libel, therefore, . . ." Written libel was explained and attention was drawn repeatedly to "letters."

Pivotal is that the primary issue was whether the content of the communication was libelous, not whether the letters were published through the mail. Had the latter been seriously in doubt, then whether there was publication by telephone could have been crucial. But not otherwise.

That the jury was almost assuredly not misled into an unevidenced operative finding is demonstrated by its questions after just twenty-five minutes of deliberation. The inquiries focused on the contents of the written communication, damages, and the definition of libel. Further deliberations took about an hour and twenty minutes.

A consideration of these circumstances and context, and the court's comprehensive charge after the lengthy trial, together with the jury's attention to the evidence that was presented, leads to the legal conclusion that the error does not require reversal of the judgment and verdict and the granting of a new trial. *Davis v. Davis*, 211 Ga. 714 (88 SE2d 377) (1955); *Scholle Atlanta Corp. v. Nealy*, 110 Ga. App. 775, 778 (140 SE2d 88) (1964).

DEEN, Presiding Judge, dissenting.

OCGA § 51-5-1 (a) defines a libel as "a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tend-

ing to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." " ' "A publication claimed to be defamatory must be read and construed in the sense in which the readers to whom it is addressed would ordinarily understand it. So the whole item . . . should be read and construed together, and its meaning and signification thus determined. When thus read, if its meaning is so unambiguous as to reasonably bear but one interpretation, it is for the judge to say whether that signification is defamatory or not." ' " *Fiske v. Stockton*, 171 Ga. App. 601, 602 (320 SE2d 590) (1984).

The Carellas letter reasonably bears but one interpretation, i.e., that it is merely a letter soliciting business, expressing an opinion that the appellant company could provide better service than the competitor appellees. The letter was not libelous as defined by OCGA § 51-5-1 (a), and the trial court should have directed a verdict for the appellant. Accordingly, I must respectfully dissent from the majority opinion's opposite conclusion.

DECIDED JUNE 18, 1990 —
REHEARING DENIED JULY 16, 1990 — CERT. APPLIED FOR.

*Clark & Clark, Fred S. Clark*, for appellant.
*Bouhan, Williams & Levy, M. Brice Ladson, Wilbur D. Owens III, Walter C. Hartridge*, for appellees.