Judge Wright
delivered the opinion of the court:
■ Where one, falsely and maliciously, orally charges another with anything involving moral turpitude, which, if true, will subject him to infamous,punishment, or that tends to exclude him from society, orto prejudice-him in his office, profession, trade, or business, the parties accused may seek redress by a suit in slanderr and recover without proof of actual damage. Where the words are false, the law infers malice, and where their natural tendency is to injure, the law presumes damages. 6 Bac. Ab. 205; Starkie on Slander, 11, 12, 100-110; 5 Johns. 188, 476; 17 Johns. 217; where the slander is written and published, it is denominated libel. A libel in reference to individual injury may be defined to be a false and malicious publication against an individual, either in print or writing, or by pictures, with intent to injure his reputation, and expose him to public hatred, contempt, or ridicule. 4 Mass. 163; 3 Johns. Cases, 354; 9 Johns. 214. Whatever 538] charge will sustain a suit for slander where the words are merely spoken, will sustain a suit for a libel, if they are written or printed and published, and it will be seen, at one glance, that *541 many charges, which, if merely spoken of another, would not sustain a suit for slander, will, if written or printed and published, ■sustain a suit for libel. Words of ridicule only, or of contempt, which merely tend to lessen a man in public esteem, or to wound his feelings, will support a suit for libel, because of their being embodied in a more permanent and enduring form; of the increased deliberation and .malignity of their publication, and of .their tendency to provoke breaches of the public peace. This we understand to be the settled law of libel in this state, sustained by the uniform decisions of our courts, without a single exception within our knowledge.
Subject the publication in question to the test of the definitions .given. The publication is declared to be of the plaintiff in his business of maker and vender of bark mills. It imputes to him the infraction of another’s patent. This, if true, would subject ■him, and those purchasing and using his mills, to prosecution. Nothing could have a more direct tendency to the entire destruction of his business. It denies the plaintiff’s right to deal in the subject of his occupation, and asserts an adverse inconsistent right which he knew and acknowledged. It thus imputes to him falsehood, fraud, the want of capacity to confer a legal right by the sale of his manufactures. It does not stop here. It asserts, moreover, in direct terms, that he perseveres in this fraudulent •and pirating trade upon the rights of the Trasks, because he is “shielded from prosecution by his want of responsibility.” If irresponsible to the inventor whose right he was charged with infringing, he was equally so to those who should purchase of him. 'The charge is, if you deal with this man you incur the risk of lawsuits for violating the rights of others, and he is insolvent, irresponsible to indemnify. Would not such a charge, if true, •blacken a man’s reputation, injure his business, expose him to hatred and contempt? In our understanding, the publication is ■unequivocally libelous.
The declaration appears to us sufficient to entitle the plaintiff to judgment.
The point argued for the defendant, that the libel was in separate publications, is not supported by the record; it is alleged to be for publishing a certain libel. The second with the appears but as a postscript to the first.