**OHIO PUBLIC SERVICE CO v MYERS**

Ohio Appeals, 9th Dist, Lorain Co

No 710. Decided May 11, 1934

F. M. Stevens, Elyria, and H. H. Hoppe, Warren, for plaintiff in error.

Deutsch & Dilgren, Elyria, for defendant in error.

**OPINION**

By WASHBURN, PJ.

We hold that there is no substantial difference in the language of said copy and the meaning conveyed and intended to be conveyed thereby, and the language alleged and the meaning claimed, as set forth in the amended petition of Myers, and therefore it was not error for the court to overrule the motion of the company for judgment, made at the close of the evidence, on the ground of failure of proof of the charge in the very words of the charge.

**Barnett v Ward, 36 Oh St 107.**

The important contention of counsel for the company is that the company published a defamation which constituted at best only a slander which was not actionable without proof of special damage, and that therefore the court erred in not directing a verdict for the company.

In considering this contention, we are assuming that merely speaking the words complained of would not be actionable in Ohio without proof of special damage, and also that no special damage was proved; but in Ohio, as elsewhere, as to the right of recovery without proof of special damage, there is a well-recognized difference between words spoken and matter that is written and published concerning a person.

**Watson v Trask, 6 Ohio 531.**

**Tappan v Wilson, 7 Ohio (Pt. I) 190.**

**State v Smily, 37 Oh St 30.**

It is stated, in substance, in many cases that written words which naturally tend to expose the person, concerning whom the same are published, to public hatred, contempt or ridicule, or deprive him of the benefits of public confidence or social intercourse, constitute a libel, and that an action will lie therefor although no special damage is alleged.

"When the authorities are carefully considered in the light of a sound public policy we think that to come within the rule permitting recovery, without proof of special damages, the printed words of ridicule or contempt must relate to matters which are required either by the moral code or the law of the land, liberally and not technically construed."

**Holloway v Publishing Co, 11 Oh Ap 226, at p. 231.**

The language used by said company at said meeting at least clearly relates to matters that are required by the moral code, and when considered in connection with the circumstances under which it was used its meaning, to those who heard it, is apparent and unmistakable; furthermore, it is no defense that the general manager stated that the writing prepared by his direction and read by him was taken from an anonymous letter, nor the fact that he said he did not know Mr. Myers but that he had "heard something about him, about his activities, and * * * wanted the people at the meeting to have the same information about Mr. Myers that I had." His evidence does not indicate that he said or did anything to discourage the audience from believing the charges read; on the contrary, it is apparent from the record that the only object in reading the charges was to have them believed. Therefore, if what said company did constituted libel, as distinguished from slander, then there was a right of recovery without proof of special damage.

The amended petition charges that the company maliciously "uttered and published, by reading a writing," certain defamatory statements about Myers, which were untrue and known to the company to be untrue. Can one publish a writing prepared by him, by telling an audience what the writing is and that he proposes to read it, and then, in full view of the audience, reading the writing, or, to constitute a publication of the writing, must he give or send it to someone or show it to someone who reads it?

It is urged that, to constitute a publication of a libel, some person other than the person libeled must have read or at least have had an opportunity to read the libel-

ous writing, and in support of the proposition, language taken from some Ohio cases is quoted which indicates that the reason why words written and published constitute libel, as distinguished from slander, is because they are embodied in a more permanent and enduring form; and then it is urged that there can be no publication of a writing unless it is seen and read, because "It is the circulation and distribution of the **writing** which puts the alleged defamatory words in a more permanent and enduring form, for certain words read without a distribution of the writing are in no more permanent form than words not written but spoken."

The authorities dealing specifically with this question do not support the proposition that, where one prepares or has prepared a libelous writing it is not published unless read by someone other than the person referred to therein; on the contrary, one who so prepares a libelous writing may publish the same by reading it to some third person who listens to the words and understands them and is told by the reader that he is reading a writing so prepared by him.

5 Coke Rep. 125.

John Lamb's case (1610), 9 Coke Rep. 60.

Johnson v Hudson & Morgan, 7 Adolphus & Ellis, 233.

Odgers on Libel and Slander (6th ed.), pp. 131-138 and 144.

Adams v Lawson, 94 Am. Dec. 455.

Forrester v Tyrell, 9 Times L. R. 257 (C. A.)

Sorensen v Wood, 82 A.L.R. 1098.

Snyder v Andrews, 6 Barb. (N. Y.) 43.

Gambrill v Schooley, 52 L.R.A. 87, at p. 91.

Miller v Butler, 6 Cush. (Mass.) 71.

Miller v Donovan, 39 N. Y. Supp. 820.

McCoombs v Tuttle, Blackford's Rep. (Ind.) 431.

Hedgpeth v Coleman, 24 A.L.R. 232.

Peterson v Western Union Tel. Co., 74 NW 1022.

Said anonymous letter is a part of the bill of exceptions, but the trial court sustained the objection to its introduction in evidence.

The record discloses that the general manager selected and marked the parts of the anonymous letter which he caused to be written; he left out of the writing prepared under his direction parts of the original which showed the anonymous writer's interest and which might tend to cast doubt upon the truthfulness of the charges against Myers. By copying only a part of the original, the general manager made the writing he had prepared **his writing:**

a writing differing from the original even if the parts copied had been correctly copied, let alone where they were not, as in this case; he therefore prepared the writing which he read at said meeting and which he sent to his two district managers in Lorain County, and it was distinctly his writing and not the writing of the author of the anonymous letter.

On the whole record we are of the opinion that the jury was fully warranted in finding that, acting for and on behalf of said company, the general manager wrote and published the defamatory matter concerning Myers contained in said writing, which, as we have already said, was in substance and effect what was charged in the petition, and that such publication was libelous and that recovery could be had without proof of special damages.

It is also urged that there was misconduct of counsel for Myers. Such claimed misconduct relates to the anonymous letter; the attempt to cross-examine the general manager in reference to it, the attempt to get it in evidence, and the reference to it in argument; all of such claimed misconduct occurring after said general manager had testified that what he read he copied from said original.

Counsel for Myers was seeking to show that the writing that was read was not correctly copied from the original, in that parts of paragraphs and of sentences within the part copied were omitted—which, if shown, would have had a direct and legitimate bearing upon the issue of the good faith or actual malice of the company, as well as demonstrated that the writing which was read was not the same as the parts of the original letter claimed to have been copied, and was therefore the writing of the general manager and not of an anonymous writer.

We have made the comparison and we think that counsel for Myers were right and should have been permitted to develop such claim by cross-examination, and, if necessary, to introduce for comparison a true copy of the parts of the original letter claimed to have been copied.

On the record as it is, we do not find that there was misconduct on the part of counsel for Myers which would warrant the court in granting a new trial on that ground.

As to the claim of excessive damages, it must be borne in mind that, in actions for libel, where the facts are such as to permit the jury to include exemplary damages in the verdict, the reviewing court will not interfere on the ground of excessive dam-

ages unless they are so gross as to indicate that the jury "acted from corruption, mistake, undue bias, or some improper influence."

**Fisher v Patterson, 14 Ohio 418.**

"In an action for slander a new trial will not be granted, on the ground of excessive damages, unless the amount is so large as to evince prejudice, partiality or corruption in the jury."

**Simpson v Pitman, 13 Ohio 365.**
Gatley on Libel and Slander, p. 719.
Newell on Slander and Libel (3rd ed.) §1065.

In the case at bar there is nothing in the evidence indicating that Myers is unworthy or lacking in character and standing, and there was evidence indicating actual malice on the part of the general manager acting for and on behalf of said company—at least there was a total disregard of Myers' rights, apparently without any justification.

The jury was justified in finding that the charge was deliberately made and was of such a serious character as to injure a sensitive, honest citizen, and we are unable to reach the conclusion that the damages assessed are "so flagrantly outrageous and extravagant as to show that the jury acted corruptly, or under the influence of passion, partiality or prejudice," and on the whole record we find no evidence that the jurors were actuated by any unworthy motive.

Judgment affirmed

FUNK and STEVENS, JJ, concur in judgment.