28470. ALLEN *v.* AMERICAN INDEMNITY COMPANY.

DECIDED OCTOBER 28, 1940. REHEARING DENIED DECEMBER 12, 1940.

*William G. McRae,* for plaintiff.
*Hooper, Hooper, & Miller,* for defendant.

FELTON, J. S. T. Allen sued the American Indemnity Company, in five counts, for alleged libels. The court granted a nonsuit, and the plaintiff excepted. The petition alleged that the defendant, through its agents, T. Elton Drake and/or F. A. Hooper Jr., maliciously prepared, composed, and published five false and libelous paper writings of and concerning the plaintiff. The evidence disclosed that J. B. Meeks, J. L. Harrison, B. F. Ginn, J. W. Sheppard, and Grady Harmon employed the plaintiff and another to represent them in prosecuting claims by suit against S. Krasner & Company. The suits were filed, Krasner & Company settled with one Boswell, who had a similar claim, through attorney Joe Turner. Krasner & Company refused to settle the suits brought by Meeks, Harrison, Ginn, and Harmon, except through their authorized attorneys. Meeks, Harrison, and Ginn then employed Joe Turner to get their cases settled, and he carried them to the office of F. A. Hooper Jr., attorney for S. Krasner & Company.

The parties stated to Mr. Hooper that they had not employed attorneys to institute their suits, and that the suits were brought without authority, and that Grady Harmon would make a similar oath as to his case. At their instance and request Mr. Hooper prepared affidavits to this effect, in substance stating that the plaintiff had instituted a suit for each without his authority. There were affidavits prepared for the three of the affiants who were present, and one for Grady Harmon who could not be present and who had employed Turner to settle his case. There was one original affidavit and three carbon copies. Except for the formal parts they were dictated by Meeks, Harrison, and Ginn. The name of each party was placed in the affidavit designated for him, including Grady Harmon's. One affidavit was delivered to each man, and Harmon's was sent to him by Turner or one of the other three men, Meeks, Harrison, or Ginn. Later these three swore to their affidavits before R. B. Blackburn, notary public, and Harmon swore to his before H. R. Page, notary public. Mr. Hooper read one of the papers in the presence of the four men. Other pertinent facts appear hereinafter.

■ If Mr. Hooper, in preparing the affidavits, was not acting as agent for Meeks, Ginn, Harrison, and Harmon, but was acting for S. Krasner & Company, the delivery of the affidavits to them under the circumstances was not the publication of a libel to them. The most that can be said is that these men uttered an oral defamation to Mr. Hooper, and that at their request he returned it to them in the form of a written defamation. It can not be said that the reputation of the plaintiff was injured by such an act. His reputation was the same in the minds of the men who dictated the affidavits before the affidavits were reduced to writing as it was afterwards. The delivery of Harmon's unsigned affidavit to any of the men (except possibly Turner) would amount to no more than the delivery of a carbon copy of his own affidavit. There is no evidence that it was delivered to Turner by Mr. Hooper. Even if it had been, there would have been no publication of a libel as to Mr. Turner because he told Mr. Hooper what Harmon would swear.

■ Each of the notaries public testified that he did not read the affidavit he witnessed. Likewise Harmon swore that he did not read the one he signed. In order to effect the publication of a

libel there must be a reading of it. Not only that, there must be an understanding of its meaning by the person reading it. 3 Restatement of the Law of Torts, 192, § 577; Odgers on Libel and Slander, 158. In this case there is no evidence which would authorize the finding that any person read the alleged libelous publication. This case should be distinguished from one involving a criminal libel, in which no publication to another other than the one defamed is required, the gravamen of criminal libel being the likelihood of causing a breach of the peace. McCurdy v. Hughes, 63 N. D. 435 (248 N. W. 512, 87 A. L. R. 683). It should also be distinguished from cases where the nature of the publication will authorize or possibly demand a finding that it was read and understood by some one, such as a publication in a newspaper or magazine, or the posting of it in a public place, etc. An oral defamation heard only by one who does not understand the language in which it is spoken is not slander. Neither is the delivery of a printed libel to a blind man who alone handles or has the opportunity to control it. Since the gravamen of a civil libel is injury to reputation, where the evidence demands a finding that the libel was not read by those to whom it was alleged to have been communicated, and there is no evidence authorizing an inference that it was communicated to any one else who read it, or will be presumed to have read it, the case must fall. That is this case. The petition involved a great deal more than we have discussed; but we have covered the issues made by the evidence. The direction of the verdict was proper.

<em>Judgment affirmed. Sutton, J., concurs.</em>

STEPHENS, P. J., concurs in the judgment.