## 30224. GARREN v. THE SOUTHLAND CORPORATION.

HALL, Justice.

We granted certiorari in this case to consider whether or not the oral reading of a written defamation is publication of a libel. This is an issue of first impression in Georgia. Our interpretation of the relevant statute, Code Ann. § 105-705, and the authorities and law of other states, convince us to answer the question affirmatively.

The plaintiff in this case was employed at one of defendant's 7-11 stores, but was "discharged for shortages." An entry to this effect was made in her personnel file. The plaintiff then applied for employment elsewhere. When that prospective employer inquired as to the reason for plaintiff's firing, he was told by a new secretary, that "all she could do was pull the personnel file, which she did, and she *read a statement off of it,* her precise words was [sic], 'Christine was discharged for shortages.' " (Emphasis supplied.) Plaintiff then sued defendant in a two count complaint; Count 1 was dismissed by the trial court and was not appealed. At the trial on Count 2, the jury awarded the plaintiff $5,000. Defendant appealed to the Court of Appeals, which reversed the trial court's judgment holding that there was no libel because the reading of the defamation over the phone was not "publication" as contemplated by Code Ann. § 105-705. It also held that while there were jury questions involved in considering the statement slanderous, the trial court erred in not directing a verdict for the defendant because the plaintiff failed to offer any evidence that the defendant's agent was "either directed or authorized" to make the statement by the corporation.

We granted certiorari on only the holding of the Court of Appeals that the statement could not be considered a libel. Since we are reversing the Court of Appeals on this issue, we need not, and do not, express any opinion as to its further rulings regarding slander.

Libel is defined in Code Ann. § 105-701 as "a false and malicious defamation of another, expressed in print, or writing, or pictures, or signs, tending to injure the reputation of an individual, and exposing him to public

hatred, contempt, or ridicule. *The publication of the libelous matter is essential to recovery."* (Emphasis supplied.) Publication is defined in Code Ann. § 105-705: "A libel is published as soon as it is *communicated to any person* other than the party libeled." (Emphasis supplied.)

The Court of Appeals in construing the statute not to include oral communication, relied on *Allen v. American Indemnity Co.,* 63 Ga. App. 894 (12 SE2d 127) (1940). We find such reliance misplaced. The holding in that case was that there had been no communication, whether oral or written, to any third person. Hence the defamation had not been published, and there was no libel. Though it is true no one read the libel, it is also true no one heard the libel read aloud either. Thus the question whether an oral reading of a written defamation is libelous was neither raised nor answered in that opinion. There has been no other case cited, nor have we found one, deciding this question in Georgia.

In construing a statute, however, great weight must be given to the plain meaning of the words used in an effort to determine the intent of the legislature. See Code Ann. § 102-102 (1, 9); *Brooks v. Brooks,* 185 Ga. 549 (195 SE 869) (1938). We therefore hold the word "communicated" and the word "publication" are broad enough to include the reading aloud of a written defamation. Such a ruling is consistent with other, prior judicial interpretations which have also broadly construed Code Ann. § 105-705. For example, in *Morgan v. Black,* 132 Ga. 67 (63 SE 821) (1908), we held that "[t]o publish means to make publicly known, to proclaim to the public, etc." and, in *Graham v. State,* 6 Ga. App. 436, 438 (65 SE 167) (1909), the Court of Appeals defined publish as "to utter, to make known." Neither opinion thus limits "publication" to an actual reading of the defamation by the third person.

The Restatement, Torts, § 577, comment a, defines publication equally broadly. "In the case of libel there is usually *some act* whereby written or printed words are brought to the attention of a third person . . ." (Emphasis supplied.) In a comment the drafters of the Restatement opined that "the fact that the defamatory words are spoken with the intention that they be embodied

forthwith in a physical form makes the speaking of them not only the publication of a slander, but a libel as well provided they subsequently are so embodied." Restatement, supra, Comment f. If an oral defamation not yet in writing can constitute libel, then a fortiori the oral reading of an already written statement must also be libelous.

In Hartmann v. Winchell, 296 N. Y. 296 (73 NE2d 30) (1947), the Court of Appeals of New York, in deciding that the broadcasting of a written script over the radio constituted the publication of a libel, relied on Forrester v. Tyrrell, 9 Times L. R. 257 (1893), an English opinion. In Forrester, the court cited three similar decisions from Coke's Reports, Snyder v. Andrews, 6 Barb. 43 (1849); John Lamb's Case, 9 Co. Rep. 59b (1610); De Libellis Famosis, 5 Co. Rep. 125a (1605), all of which held that the reading out loud of a defamatory letter to a stranger constituted libel. "By the great weight of authority in other states this rule coming down from Coke's time and declared in Forrester v. Tyrrell, supra, is the law today. M'Coombs v. Tuttle, 5 Blackf. (Ind.) 431; Bander v. Metropolitan Life Ins. Co., 313 Mass. 337 [47 NE2d 595]; Peterson v. Western Union Telegraph Co., 72 Minn. 41 [74 NW 1022, 40 LRA 661, 71 ASR 461]; Ohio Public Service Co. v. Myers, 54 Ohio App. 40 [6 NE2d 29]; Adams v. Lawson, 17 Grat. (Va.), 250 [94 AD 455]." Hartmann v. Winchell, supra, p. 299. Accord, Gibson v. Kincaid, 140 Ind. App. 186 (221 NE2d 834) (1967); Charles Parker Co. v. Silver City Crystal Co., 142 Conn. 605 (116 A2d 440) (1955); Niehoff v. Sahagian, 149 Me. 396 (103 A2d 211) (1954); Ostrowe v. Lee, 256 N. Y. 36 (175 NE 505) (1931); Hedgpeth v. Coleman, 183 N. C. 309 (111 SE 517) (1922).

The reasoning of these other states persuades us to adopt a similar rule, perhaps best expressed by Justice Cardozo in Ostrowe v. Lee, supra, p. 39. "The schism in the law of defamation between the older wrong of slander and the newer one of libel is not the product of mere accident. [Cits.] It has its genesis in evils which the years have not erased. Many things that are defamatory may be said with impunity through the medium of speech. Not so, however, when speech is caught upon the wing and transmuted into print. What gives the sting to the writing

is its permanence of form. The spoken word dissolves, but the written one abides and perpetuates the scandal." Thus it is the writing of the defamatory words that distinguishes libel from slander. The fact that the defamation is then communicated orally does not erase this distinction. The written words remain on the page, available to be read by and to others. This is the essence of libel.

We therefore hold that the oral communication of a written defamation constitutes libel. Since the Court of Appeals did not consider the defendant - appellant's other contentions as to libel, we reverse and remand this case for further consideration not inconsistent with this opinion.

*Judgment reversed and remanded. All the Justices concur.*

ARGUED NOVEMBER 10, 1975 — DECIDED JANUARY 6, 1976.

*Pierce, Ranitz, Berry, Mahoney & Forbes, C. James McCallar, Jr.,* for appellant.
*Bouhan, Williams & Levy, James M. Thomas, Paul W. Painter, Jr.,* for appellee.