IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 6, 2003 Session

## DONITA PIPER, ET AL. v. CURTIS MIZE

**Appeal from the Circuit Court for Montgomery County**
**No. 50000474    John H. Gasaway, III, Judge**

---

### No. M2002-00626-COA-R3-CV - Filed June 10, 2003

---

Plaintiffs in this case are citizens of Montgomery County. Defendants, Paul Avallone, Wayne Gill, Curtis Mize and Yvonne Van Der Touw are also citizens of Montgomery County who, in varying degrees, were alleged to be involved in the printing and distribution of a newspaper known as *The Rattler*. Defendant Avallone was the sole writer, publisher and editor of each issue of *The Rattler*. Defendant Mize is a businessman who allowed copies of the October 5, 2000 edition of *The Rattler* to be placed on the counter at his place of business for free distribution. The trial court granted summary judgment in favor of Defendant Mize and finalized the judgment as to Mize under Tennessee Rules of Civil Procedure 54.02. Plaintiffs appeal, and we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and STELLA HARGROVE, SP. J., joined.

Rodger N. Bowman, Clarksville, Tennessee, for the appellants, Donita Piper and Lori Turner.

Christopher J. Pittman, Clarksville, Tennessee, for the appellee, Curtis Mize.

### OPINION

At the time of the events involved in this defamation suit, Johnny Piper was Mayor of the City of Clarksville, Tennessee. Plaintiff/Appellant, Donita Piper, was his wife. Plaintiff/Appellant, Lori Turner, was a former candidate for Mayor of Clarksville and was the Grants Writer for the City of Clarksville.

On or about February 1, 2000, a person or persons not enamored with the merits of the Piper administration began distribution of an underground newspaper called *The Rattler*. Referring to itself as a "slander sheet" this publication proclaimed itself to be "the first in venomous gossip." To say that the various issues of *The Rattler* were uncomplimentary of Mayor Piper, his wife Donita

Piper and Grants Writer Lori Turner would be a most charitable understatement. This appeal, however, does not provide a proper forum for a full adjudication of the issues between those who wrote, edited and published the various issues of *The Rattler* on the one hand, and Plaintiffs, Donita Piper and Lori Turner, on the other. The record shows that Defendant/Appellee Curtis Mize neither wrote, edited nor published any issue of *The Rattler*, but such was the handiwork of Defendant Paul Avallone. The issues drawn between Plaintiffs on one hand and Paul Avallone and the other Defendants on the other remain before the trial court. Pursuant to the finality designation entered by the trial court under Tennessee Rules of Civil Procedure 54.02, only the Curtis Mize case is before this Court, and only such acts as the record shows to be attributable to Defendant Mize are at issue in this appeal.

While the Complaint filed in this case is extensive and does not distinguish the relative degrees of alleged culpability of Defendants, the record before the Court establishes that the participation of Defendant Curtis Mize in *The Rattler* saga is limited to his action in allowing a single edition of *The Rattler*, to wit, the October 5, 2000 edition, to be placed on the counter at his place of business, along with other free publications, for his customers to take if they so chose.

The meat of the October 5, 2000 issue of *The Rattler*, as it relates to this case, is an article entitled "Sex Scandals Still Rock City Hall." Under this eye catcher is said, "Loud mouths and gossips had a field day earlier in the year when rumors of Mayor Piper's infidelity with his grants gal, the vivacious and every spunky Ms. Lori Turner, spread like a Montana wildfire through the nooks and crannies of this otherwise quiet mini-metropolis on the Cumberland River." The article continues with a recitation that, "as the story goes," the Mayor's wife, Donita Piper, catching him in the act with Ms. Turner the previous January, "clobbered him with a nine iron."[1]

Curtis Mize answered the Complaint with general denials and, after discovery, filed a Motion for Summary Judgment. The trial court granted the Motion holding:

> On November 15, 2001, the defendant, Curtis Mize, filed a motion for summary judgment. In support of his motion, the defendant simultaneously filed a memorandum of law, a statement of undisputed material facts and ten (10) exhibits consisting of publications, correspondence, portions of depositions, requests for admissions and an affidavit by the defendant. On December 18, 2001, the plaintiffs filed a brief in response to the defendant's motion. On December 18, 2001, the defendant filed his reply to the plaintiffs' brief.
> The Court has considered all of the above, deems the facts asserted by the defendant to be undisputed, and finds that there is no genuine issue as to any material

---

[1] The October 5, 2000 issue of *The Rattler* contains the disclaimer, "*The Rattler* is a miracle blend of fact, fiction, truth, opinion and satire. It uses inventive names in all its stories, except in cases where public figures are being satirized. Any other use of real names is accidental and coincidental. If you are a thin-skinned public official and don't like being satirized, give up the easy money and the perks of power and get out of the spotlight." The effect of this caveat, if any, addresses itself primarily to the issues between and among the parties still before the trial court.

fact and further finds that the defendant is entitled to summary judgment as a matter of law.

Plaintiffs timely appealed.

In granting the Motion for Summary Judgment filed by Defendant Curtis Mize, the trial court had before it undisputed facts establishing:

1.     Paul Avallone, is the sole writer, publisher and editor of each issue of the newspaper known at (sic) "*The Rattler*" except the October 10, 2000 alleged edition of "*The Rattler*" which was not written, published, or distributed by Avallone.

2.     Paul Avallone talked to no one about his planned newspaper before he began publishing "The Rattler."

3.     Paul Avallone, alone, distributed the various issues of "The Rattler."

4.     Paul Avallone printed and distributed thousands of copies [of] various issues of "The Rattler."

5.     No one except Yvonne Van Der Touw knew prior to Paul Avallone's deposition in this lawsuit that Paul Avallone was the writer, publisher, and editor of "The Rattler."

6.     Curtis Mize did not print any issue of "The Rattler."

7.     Curtis Mize did not write any story found in any issue of "The Rattler."

8.     Curtis Mize did not take any pictures used in any issue of "The Rattler."

9.     Curtis Mize did not pay any printing costs of any issue of "The Rattler."

10.     Curtis Mize did not tell Paul Avallone to publish any issue of "The Rattler."

11.     Curtis Mize did not give Paul Avallone any story idea to use in any issue of "The Rattler."

12.     Neither of the plaintiffs ever requested, either orally or in writing, that Curtis Mize retract any of the statements contained in any edition of "The Rattler."

13.     The plaintiffs' complaint specifically asserts that the February 1, 2000, October 5, 2000 and October 10, 2000 editions of "The Rattler" contain defamatory statements concerning the plaintiffs.

14.     Among the "stories" contained in the February 1, 2000 edition of "The Rattler" are stories asserting the following: that the Republican National Convention would be held in Clarksville in 2004 and that an additional 18,673 parking spaces had been located in downtown Clarksville.

15.     Among the "stories" contained in the October 5, 2000 edition of "The Rattler" are stories asserting the following: that God announced that one local politician was going to win an upcoming election; and that Mayor Johnny Piper's head exploded on television during the taping of a program.

16.     Paul Avallone did not write, publish or distribute any copies of the document purporting to be the October 10, 2000 edition of "The Rattler."

17.     Curtis Mize did not write, publish or distribute any copies of the documents purporting to be the October 10, 2000 edition of "The Rattler."

18.     The plaintiffs cannot identify any harm suffered by them due to the actions of Curtis Mize.

19.     There were rumors in the community of Clarksville, Tennessee, before February 1, 2000, that Mayor Johnny Piper had allegedly had an affair and that the plaintiff, Donita Piper, caught her husband in such an affair and hit him with a golf club.

20.     Plaintiff Lori Turner is a former candidate for Mayor of the City of Clarksville.

21.     Plaintiff Lori Turner has been the subject of numerous articles in both the "*Our City*" newspaper and "The Leaf-Chronicle" newspaper.

22.     Plaintiff Lori Turner has been the featured speaker at various civic groups in the past 7 years.

23.     Plaintiff Lori Turner has hosted a local radio talk show.

24. Plaintiff Donita Piper is married to the Mayor of Clarksville, Tennessee.

25. Plaintiff Donita Piper has traveled out of the state and country as the spouse of the Mayor of Clarksville, Tennessee.

26. Plaintiff Donita Piper has written stories and has been a guest commentator for "*The Leaf-Chronicle*" newspaper.

27. Curtis Mize did not distribute any copies of the February 1, 2000 edition of "*The Rattler*."

28. Paul Avallone anonymously left several copies of the October 5, 200[0] edition of "The Rattler" at the front door of Curtis Mize's business before Curtis Mize arrived at work one day in early October 2000.

29. Along with the October 5, 2000 edition of "*The Rattler*," Curtis Mize also has allowed other free publications, such as "*Our City*" to be placed on his counter at work for customers to take if they choose.[2]

DEFAMATION

Certain near universal rules of law form a backdrop for our consideration. The law of defamation consists of the twin torts of libel and slander. *Lara v. Thomas*, 512 N.W.2d 777 (Iowa 1994); *Batt v. Globe Engineering Co.*, 774 P.2d 371 (Kan. Ct. App. 1989). "It is reputation which is defamed, reputation which is injured, and reputation which is protected by the law of defamation." 50 Am.Jur.2nd *Libel and Slander* § 2 (1995); *see also Gobin v. Globe Publ'g Co.*, 649 P.2d 1239 (Kan. 1982).

As regards a private person, "To establish a prima facie case of defamation in Tennessee, the plaintiff must establish that: 1) a party published a statement; 2) with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. *See* Restatement (Second) of Torts § 580 B (1977); *Press, Inc. v. Verran*, 569 S.W.2d 435, 442 (Tenn.1978)." *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999).

As regards a public official or public figure, Tennessee follows section 580(a) of the Restatement of Torts providing:

---

[2] These undisputed facts are taken verbatim from the Defendant's Rule 56.03 Statement of Undisputed Material Facts filed with his Motion for Summary Judgment. The Statement of Undisputed Facts is, indeed, undisputed by Plaintiffs/Appellants.

§ 580A. *Defamation of Public Official or Public Figure.* One who publishes a false and defamatory communication concerning a public official or public figure in regard to his conduct, fitness or role in that capacity is subject to liability, if, but only if, he

  (a) knows that the statement is false and that it defames the other person, or

  (b) acts in reckless disregard of these matters.

*Press, Inc. v. Verran*, 569 S.W.2d 435, 442.

" 'Publication' is a term of art meaning the communication of defamatory matter to a third person." *Sullivan*, 995 S.W.2d at 571-72 (citing *Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 821 (Tenn. 1994). "This being a civil and not a criminal suit for libel, it is essential that there be publication; that is, a communication of the defamatory matter to a third person. This is so for the reason that the gravamen of the act is the pecuniary damage to the character or credit of the party libeled. No such damage can arise, of course, without publication." *Freeman v. Dayton Scale Co.*, 19 S.W.2d 255, 256 (Tenn. 1929). There is a difference between civil and criminal actions for liable where publication is concerned. "In the former, publication must be made to some third person, or in such public manner as to reach third persons; but, in criminal proceedings, publication may be made by communicating the printed matter alone to the party libeled." *Fry v. McCord*, 33 S.W. 568, 571 (Tenn. 1895).

If the person allegedly libeled is a "public official or public figure," only clear and convincing proof of actual malice on the part of the defendant will survive a motion for summary judgment. *Trigg v. Lakeway Publishers, Inc.*, 720 S.W.2d 69, 75 (Tenn. Ct. App. 1986).

The defamation action at bar is a libel action, as opposed to one for slander. Three questions are dispositive of the case:

  1. Did Curtis Mize "publish" the October 5, 2000 issue of "The Rattler"?

  2. Are Donita Piper and Lori Turner "public figures"?

  3. If so, does the record disclose sufficient evidence of actual malice on the part of Curtis Mize?

THE STANDARD OF REVIEW ON APPEAL

As to the questions of whether or not Defendant Mize published the October 5 issue of *The Rattler* and whether or not Donita Piper and Lori Turner are "public figures," the standard of review of a grant of summary judgment is well settled by *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993) and *Evco Corp. v. Ross*, 528 S.W.2d 20 (Tenn. 1975). The trial court, and this Court on appeal, must look at all the evidence and take the strongest legitimate view of it in favor of the opponent of the motion allowing all reasonable inferences in favor of the opponent and discarding all countervailing evidence. If, after doing so, there is any dispute as to any material fact or any doubt as to the conclusion to be drawn from the evidence, the motion must be denied.

As to the third question, assuming Plaintiffs are actually "public figures," Defendant can be held liable only if actual malice is supported by clear and convincing evidence. A different, and rather controversial, standard of review is applicable on summary judgment. In addressing this very issue, the Supreme Court of the United States, in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505; 91 L.Ed.2d 202, 255-56 (1986), held:

> In sum, we conclude that the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case. This is true at both the directed verdict and summary judgment stages. Consequently, where the *New York Times* "clear and convincing" evidence requirement applies, the trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant. Thus, where the factual dispute concerns actual malice, clearly a material issue in a *New York Times* case, the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not.

> In sum, a court ruling on a motion for summary judgment must be guided by the *New York Times* "clear and convincing" evidentiary standard in determining whether a genuine issue of actual malice exists - - that is, whether the evidence presented is such that a reasonable jury might find that actual malice had been shown with convincing clarity.

This holding by the Court evoked two of the most vigorous dissenting opinions in print with Justice Brennan observing:

> The Court today holds that "whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case," *ante*, at 255. In my view, the Court's analysis is deeply flawed, and rests on a shaky foundation of unconnected and unsupported observations, assertions, and conclusions. Moreover, I am unable to divine from the Court's opinion *how* these evidentiary standards are to be considered, or what a trial judge is actually supposed to do in ruling on a motion for summary judgment. Accordingly, I respectfully dissent.

> . . . .

> In my view, if a plaintiff presents evidence which either directly or by permissible inference (and these inferences are a product of the substantive law of the underlying claim) supports all of the elements he needs to prove in order to prevail on his legal claim, the plaintiff has made out a prima facie case and a defendant's

motion for summary judgment must fail regardless of the burden of proof that the plaintiff must meet. In other words, whether evidence is "clear and convincing," or proves a point by a mere preponderance, is for the factfinder to determine. As I read the case law, this is how it has been, and because of my concern that today's decision may erode the constitutionally enshrined role of the jury, and also undermine the usefulness of summary judgment procedure, this is how I believe it should remain.

*Anderson*, 477 U.S. at 257-58, 268 (Brennan, J., dissenting).

Justice Rehnquist observed:

> The Court, apparently moved by concerns for intellectual tidiness, mistakenly decides that the "clear and convincing evidence" standard governing finders of fact in libel cases must be applied by trial courts in deciding a motion for summary judgment in such a case. The Court refers to this as a "substantive standard," but I think it is actually a procedural requirement engrafted onto Rule 56, contrary to our statement in *Calder v. Jones*, 465 U.S. 783 (1984), that
>> "[w]e have already declined in other contexts to grant special procedural protections to defendants in libel and defamation actions in addition to the constitutional protections embodied in the substantive laws." *Id.*, at 790-791.
> The Court, I believe, makes an even greater mistake in failing to apply its newly announced rule to the facts of this case. Instead of thus illustrating how the rule works, it contents itself with abstractions and paraphrases of abstractions, so that its opinion sounds much like a treatise about cooking by someone who has never cooked before and has no intention of starting now.

*Id.* at 268-69 (Rehnquist, J., dissenting).

Tennessee echoed to follow the *Anderson* majority in *Trigg v. Lakeway Publishers, Inc.*, wherein this Court held:

> Plaintiff also contends that summary judgment was inappropriate even if he was a public figure because there is a genuine issue of fact of whether the *Times* and Thompson were guilty of "actual malice."
>> . . . *New York Times Co. v. Sullivan* [376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)] makes actual malice a constitutional issue to be decided in the first instance by the trial judge applying the *Times* test of actual knowledge or reckless disregard of the truth [and] [u]nless the court finds, on the basis of pretrial affidavits, depositions, or other documentary evidence, that the plaintiff can prove actual malice in the *Times* sense, it should grant summary judgment.

Wright, J., concurring, *Wasserman v. Time, Inc.*, 424 F.2d 920, 922 (D.C. Cir.), *cert. denied*, 398 U.S. 940, 90 S.Ct. 1844, 26 L.Ed.2d 273 (1970).

"[A] public figure cannot resist a newspaper's motion for summary judgment under Rule 56 by arguing that there is an issue for the jury as to malice unless he makes some showing, of the kind contemplated by the Rules, of facts from which malice may be inferred." *Thompson v. Evening Star Newspaper Co.*, 394 F.2d 774, 776 (D.C. Cir. 1968).

Whether there is "actual malice" is a proper question to be decided on motion for a summary judgment.

On motion for summary judgment where plaintiff, as in this case, is a "public figure," it is incumbent upon him to show "actual malice" with "convincing clarity." *See New York Times Co. v. Sullivan*, 376 U.S. at 285-286, 84 S.Ct. at 729, 11 L.Ed.2d at 710.

*Trigg*, 720 S.W.2d at 74; *see also Tomlinson v. Kelley*, 969 S.W.2d 402 (Tenn. Ct. App. 1997).

It is, therefore, incumbent upon this Court, in reviewing this grant of summary judgment as to the issue of actual malice, to determine, not whether there is material evidence in the record supporting Plaintiffs, but whether or not the record discloses clear and convincing evidence upon which a trier of fact could find actual malice.

PUBLICATION

"Publication" as used in the tort of defamation has no relationship to the ordinary meaning of the term as used in everyday life. In the law of defamation, it is a term of art meaning the communication of defamatory matter to a third person. *Quality Auto Parts*, 876 S.W.2d at 821; *Sullivan*, 995 S.W.2d at 571-72. "Publication" is an element of the tort which the plaintiff must prove or suffer his complaint to be dismissed.

The term "publication" causes some confusion in a libel case such as this because it is both a business term meaning printing and distribution of written materials and a legal term meaning communication of libelous matter to a third person. Painter, "Republication Problems in the Law of Defamation." 47 Va.L.Rev. 1131 (1961); 62 Harv.L.Rev. 1041 (1949). Moreover, "publication" used as a legal term in the *Isenberg* case and in T.C.A. § 39-2702 does not determine how many causes of action are created by printing and distribution of a libelous book. Rather, use of the legal term in those instances merely indicates that publication is an essential element of a libel action without which the complaint must be dismissed.

*Applewhite v. Memphis State University*, 495 S.W.2d 190, 192-3 (Tenn. 1973).

A distinction must, likewise, be drawn between the use of the term "publication" in a criminal indictment and its use as an element of the civil tort.

It is proper to state that there is a marked difference between civil and criminal actions for libel, – so far, at least, as the question of publication is concerned. In the former, publication must be made to some third person, or in such public manner as to reach third persons; but, in criminal proceedings, publication may be made by communicating the printed matter alone to the party libeled. The reason for this difference is that in a civil action of libel the gravamen of the action is the pecuniary damage to the character or credit of the party libeled, but in a criminal action the ground of the offense is the liability of the words written to provoke a breach of the peace. In the civil action the only publication that could injuriously affect the credit and character is that made to third persons, as no damage to credit or character could result from a letter or writing known only to the party to whom it is sent, and not communicated to others.

*Fry*, 33 S.W. at 571-72 (citations omitted); *see also Insurance Research Service, Inc. v. Associates Financial Corp.*, 134 F.Supp. 54, 61 (M.D. Tenn. 1955).

While the undisputed facts show that thousands of copies of all editions of *The Rattler* were freely distributed in the Clarksville community by its publisher, Paul Avallone, and others, the case before the Court as to Curtis Mize is limited to what the undisputed facts show to be his individual conduct. He is a political opponent of the Piper administration and makes no secret in deposition that his sympathies lie with the writer, publisher and editor of *The Rattler*. The same undisputed facts show, however, that his participation in any distribution of *The Rattler* was limited to allowing a number of copies of the October 5, 2000 issue to be placed on the counter of his place of business, along with other free newspapers, for his customers to take if they elected to do so. There is no evidence in the record that any copy of the October 5, 2000 edition of *The Rattler* ever reached the hands of a third party by any action of Curtis Mize, or that any third party ever took a copy of *The Rattler* from the counter in his place of business. Donita Piper testified:

Q. Okay. How many copies of the Rattler did Mr. Mize give out?
A. Again, I have no knowledge of that.
Q. Okay. To whom did Mr. Mize give copies of the Rattler?
A. Again, I don't know who his employees are. I don't know who his clients are. I don't know who his friends are. They would probably be able to answer that better than I, but I don't have any knowledge of who.

When asked in deposition what third party had received a copy of *The Rattler* from either Curtis Mize or his place of business, Lori Turner could name no person, save a single individual named Roger Freeman, and as to this person, she testified:

Q. Well, didn't you say Mr. Freeman didn't - - he tried to give him a copy and Mr. Freeman or Pastor Freeman didn't take it?
A. Correct.

-10-

> Q. So do you have the names of anybody who can corroborate that they received a copy of the Rattler from Mr. Mize?
>
> . . . .
>
> A. No.

An unsuccessful effort to deliver an alleged libelous document to a third person will not suffice to establish "publication."

> There appears to be no question in the law of defamation that liability is not established unless the allegedly defamatory statement is in fact understood by a third person as referring to plaintiff. Restatement of the Law, Torts, Sec. 564 and comments; 53 C.J.S., Libel and Slander, § 82a, p. 133; 33 Am.Jur., Sec. 89, p. 102; Annotation 91 A.L.R., p. 1171; *Tompkins v. Wisener*, 33 Tenn. 458.
>
> " * * * It is necessary that the recipient of the defamatory communication understand it as intended to refer to the plaintiff * * *. If, however, the recipient does not understand that the plaintiff is intended thereby, the fact that the defamer intended to refer to him is immaterial." Restatement of the Law, Torts, Sec. 564, Comment, paragraph a.

*Insurance Research Service, Inc.*, 134 F.Supp. at 61. In this same Restatement of Torts context, the Court of Appeals of Georgia held:

> "In order to effect the publication of a libel there must be a reading of it. *Not only that, there must be an understanding of its meaning by the person reading it . . .* Since the gravamen of civil libel is injury to reputation, where the evidence demands a finding that the libel was not read by those to whom it was alleged to have been communicated, and there is no evidence authorizing an inference that it was communicated to anyone else who read it, or will be presumed to have read it, the case must fall." (Emphasis supplied.) *Allen v. American Indem. Co.*, 63 Ga.App. 894, 895-896, 12 S.E.2d 127 (1940). "It is not enough that the language used is reasonably capable of a defamatory interpretation if the recipient did not in fact so understand it." Restatement of the Law, Torts 2d, § 563, Comment c, p. 163.

*Sigmon v. Womack*, 279 S.E.2d 254, 257 (Ga.Ct.App. 1981).

We are not dealing, in this appeal, with a publisher of a newspaper or magazine where mass distribution would authorize a finding that the publication was read and understood by some third party within the context of Restatement (Second) of Torts section 563, but rather with a very limited posting of the October 5, 2000 issue of *The Rattler*, by one who had no part in the writing, publishing, editing or actively disseminating the scandal sheet. No competent material evidence has

been offered that Curtis Mize "published" the October 5, 2000 issue of *The Rattler* within the meaning of the "publication" element of the tort of defamation. Summary judgment was properly granted by the trial court.

PUBLIC FIGURES

The "actual malice" requirements of the landmark case of *New York Times Co. v. Sullivan* do not apply to Donita Piper and Lori Turner unless it is first determined that they are "public figures" within the meaning of *New York Times*. Tennessee adopted standards in sections 580A and 580B of the Restatement (Second) of Torts (1977) in establishing the distinction between defamation as to a public official or public figure and defamation of a private person. As to a public official or public figure, one can only be held liable if he knows that the statement is false and that it defames another person, or if he acts in reckless disregard of such matters. As to a private person, he may be held liable if he knows that the statement is false and that it defames the person, acts in reckless disregard of these matters, or acts negligently in failing to ascertain them. *Press, Inc.*, 569 S.W.2d 435.

The disparity in treatment of these two classes of citizenry is inextricably interwoven with freedom of the press as defined in the First Amendment to the Constitution of the United States and in Article 1, section 19 of the Constitution of Tennessee. The right of the news media to criticize official conduct is the basis for the distinction between public figures and private persons. In the colorful words of Chief Justice Henry:

> From the days of the lonely pamphleteer operating clandestinely in Colonial America and crying out against the usurpations of the Crown, we have elected to reap the benefits and bear the burdens of a free and courageous press. It may disturb our tranquility; i[t] may vex our peace of mind; it may outrage our sensibilities; it may shock our conscience; and it may even momentarily shake our beliefs in the right of freedom of the press; but so deeply grounded is our national commitment to a free press that we as a nation tolerate its abuses. The *Quid pro quo* is that we profit by the very freedom that sometimes causes us to squirm.

*Press, Inc.*, 569 S.W.2d at 442.

The heart of the *New York Times*' rule says, "The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice' - that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times*, 376 U.S. at 279-80.[3]

---

[3] The Rule was extended to "public figures" by *Curtis Publishing Co. v. Butts*, 380 U.S. 130 (1967) and by *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974).

In determining the "public figure" status of Appellants, the Tennessee Supreme Court gives guidance:

The term "public figure" has been defined variously by the courts as reference to the above cases will indicate. Included within this classification must be those who have thrust themselves into the vortex of important public controversies; those who achieve such pervasive fame or notoriety that they become public figures for all purposes, and in all contexts; those who voluntarily inject themselves, or are drawn into public controversies, and become public figures for a limited range of issues; and those who assume special prominence in the resolution of public questions. There, no doubt, are other involvements that would invoke the "public figures" designation.

Finally, we think that a critical concern must be the nature and extent of the individual's participation in the particular controversy. See *Gertz, supra.* The status of the individual and the nature and extent of his involvement must be considered in those cases wherein the defamed party is involved in an activity affecting the public, but may not precisely fit into the pattern of a public official or public figure. It is a fact of life that one may be a public official today, a public figure tomorrow and a nonentity the next. His status must, in the last analysis, be dependent not only upon title or some convenient nomenclature, but also upon the character, nature, purpose, intent and extent of his participation in the particular controversy.

*Press, Inc.*, 569 S.W.2d at 441.

The undisputed facts show that Donita Piper, at the time of the events involved in this case, was the wife of the Mayor of the City of Clarksville, that she traveled extensively out of the state and out of the country as the spouse of the Mayor, and that she has written stories and has been a guest commentator for *The Leaf-Chronicle* newspaper. Lori Turner was the incumbent Grants Writer for the City of Clarksville. She had been a candidate for Mayor of the City of Clarksville; had been the subject of numerous articles in both the *Our City* newspaper and *The Leaf-Chronicle* newspaper; had been a featured speaker at various civic groups in the past seven years; and had been host of a local radio talk show. Both Donita Piper and Lori Turner are "public figures" within the parameters laid down by *Press, Inc. v. Verran.*

ACTUAL MALICE

In this case, the Complaint does not allege, and the record does not contain, any evidence of a conspiracy. While the Complaint alleges joint and several liability as to all Defendants, the proof offered does not establish joint activity, at least as to Defendant/Appellee Curtis Mize. He must, therefore, be judged on this Summary Judgment Motion on the basis of his individual activity.

Evidence of "actual malice" within the *New York Times - Verran* standard is, at best, weak as to Mize and certainly does not rise to the dignity of "clear and convincing evidence." Summary judgment for Mize is mandated by *Tomlinson v. Kelley.*

Public figures who desire to pursue defamation actions bear a heavy burden of proof because of our society's commitment to the principle that "debate on public issues should be uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964). In order to recover damages, they must prove with convincing clarity that the defendant acted with actual malice. *See Press, Inc. v. Verran*, 569 S.W.2d 435, 551 (Tenn. 1978); *Moore v. Bailey*, 628 S.W.2d 431, 433 (Tenn.Ct.App.1981).

The concept of actual malice in defamation cases connotes more than personal ill will, hatred, spite, or desire to insure. *See Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510, 111 S.Ct. 2419, 2429, 115 L.Ed.2d 447 (1991); *McCluen v. Roane County Times, Inc.*, 936 S.W.2d at 939; *Windsor v. Tennessean*, 654 S.W.2d 680, 688 (Tenn.Ct.App.1983). Rather, it is limited to statements made with knowledge that they are false or with reckless disregard to their truth or falsity. *See Press, Inc. v. Verran*, 569 S.W.2d at 441; *Cloyd v. Press, Inc.*, 629 S.W.2d 24, 27 (Tenn.Ct.App.1981); Restatement (Second) of Torts § 580A (1977). Determining whether a defendant acted with reckless disregard requires the finder of fact to determine whether the defendant "in fact entertained serious doubts as to the truth of his [or her] publication." *Trigg v. Lakeway Publishers, Inc.*, 720 S.W.2d at 75 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968)).

*Tomlinson*, 969 S.W.2d at 405-06.

It is admitted by Plaintiffs that rumors of an affair between Mayor Piper and Lori Turner were rampant in the community long before the October 5, 2000 edition of *The Rattler*. The best that can be said of the proof is that it establishes that, Mize did not subjectively believe the rumors, that he did not investigate the validity of the rumors, and that he was a political opponent of Mayor Piper. These facts fall considerably short of being "clear and convincing evidence" of actual malice on the part of Curtis Mize. Summary judgment was properly granted. *See Sullivan*, 376 U.S. 254; *Gertz*, 418 U.S. 323; *Liberty Lobby, Inc.*, 477 U.S. 242; *Press, Inc.*, 569 S.W.2d 435; *Trigg*, 720 S.W.2d 69; *Tomlinson*, 969 S.W.2d 402.

As to the allegations of outrageous conduct and false light invasion of privacy, no proof is offered that the conduct of Curtis Mize "has been so outrageous in character, and so extreme in degree, as to go beyond the pale of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Major v. Charter Lakeside Hosp., Inc.*, 1990 WL 125538, at * 3 (Tenn. Ct. App. Aug. 31, 1990). The rumors contained in the October 5, 2000 issue of *The Rattler* were already prevalent in the Clarksville community long before October 5, 2000. No basis exists for a claim of false light invasion of privacy. *Langford v. Vanderbilt University*, 287 S.W.2d 32 (Tenn. 1956); *Fann v. City of Fairview*, 905 S.W.2d 167 (Tenn. Ct. App. 1994); *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640 (Tenn. 2001).

CONCLUSION

Whatever may be the rights and responsibilities between and among parties still before the trial court is not material to this appeal. On this Rule 54.02 designation of finality and the appeal of the Plaintiffs as to Curtis Mize, we are called upon to adjudge whether or not the trial court correctly granted summary judgment to Curtis Mize. We find summary judgment to have been properly granted and, in all respects, affirm the judgment.

Costs of this cause are assessed to the Appellants.


                                        _____
                                          WILLIAM B. CAIN, JUDGE